Max ROSEN, Plaintiff,

v.

DISTRICT COUNCIL NO. 9 OF NEW YORK CITY, OF THE BROTHERHOOD OF PAINTERS, DECORATORS & PAPERHANGERS OF AMERICA, Martin Rarback, as Secretary-Treasurer of District Council No. 9 of New York City, and Louis Caputo, as President of District Council No. 9 of New York City, Defendants.

United States District Court
S. D. New York.
June 8, 1961.

Rabinowitz & Boudin, New York City, for plaintiff.

Ashe & Rifkin, New York City, George Rifkin, New York City, of counsel, for defendants.

LEVET, District Judge.

This is a motion by plaintiff, a member of Local Union 454, affiliated with District Council No. 9, Brotherhood of Painters, Decorators & Paperhangers of America, brought on by an order to show cause, for a temporary injunction to enjoin the defendants from enforcing plaintiff's suspension from union membership rights for a period of five years, and, particularly, from interfering with plaintiff's right to be nominated for office in forthcoming union elections, and to run for such office if nominated.

On December 7, 1960, plaintiff was found guilty by a Trial Board of the District Council of having "associated himself with and given support to the Communist Party in direct violation of ·Section 92(d) and (e) of the Brotherhood Constitution." (See Exhibit A attached to Affidavit of Louis Caputo, p. 5.) As a result, plaintiff was prohibited from participating in union activities for a period of five years and was barred from being a candidate for "any office or position in any Local Union or in the District Council, or for a Delegate to the District Council" during said period. (See Exhibit A attached to Affidavit of Louis Caputo, p. 5.) Upon appeal to the General Executive Board of the Brotherhood in Lafayette, Indiana, the Trial Board's decision was affirmed.

Plaintiff contends in substance that the proceedings resulting in his suspension violated the Brotherhood Constitution and the Labor-Management Reporting and Disclosure Act of 1959 (hereinafter the Act), 29 U.S.C.A. § 401 et seq., particularly § 411(a) (1), (2) and (5).

Due to the fact that a temporary restraining order was signed on May 19, 1961 by Judge Metzner of this court, to which order defendants consented, plaintiff's nomination on June 2, 1961 by his local for the office of Secretary-Treasurer of District Council No. 9 was entered. On the evening of June 13, 1961, the Council will certify, from those nominated, candidates for the elections to be held on June 24th. Both sides have accordingly requested an expeditious determination of this motion in view of these imminent events.

Congress has seen fit to entrust the federal courts with the vindication of those rights guaranteed to union members by the Act. "Undemocratic union processes have no place in our American way of life," Mcfarland v. Building Material Teamster Local 282 et al., D.C.S.D.N.Y. 1960, 39 Labor Cases ¶ 66,160 at 69,167, for "no individual or group of individuals, organized or unorganized, is above the law," Reilly v. Hogan, 1952, 32 N.Y.S.2d 864, 868, affirmed 1st Dept., 1942, 264 App.Div. 855, 36 N.Y.S.2d 423.

By becoming a member of a union, the worker, in effect, agrees to be governed by the Constitution and By-Laws and rules of the organization. Polin v. Kaplan, 1931, 257 N.Y. 277, 281–282, 177 N.E. 833. See also Smith v. General Truck Drivers, etc., Union Local 467, D.C.S.D.Cal.1960, 181 F.Supp. 14, 15. Of course, such "membership does

not divest him of the elemental and more fundamental rights of fair play," Reilly v. Hogan, supra, 32 N.Y.S.2d at page 868. As Justice Collins declared in the Reilly case, supra, 32 N.Y.S.2d at page 868:

"As umpire, the Court inquires whether fair play has been practiced. But evidence is not weighed or sifted with niceties, nor are fine distinctions drawn. The Courts recognize that irregularities and inequities are inevitable if not inherent in union trials, as in other trials, and that with all these the Courts cannot always cope."

■ Having prescribed procedural methods for taking disciplinary action against a member, the District Council was therefore obliged to adhere to such procedure and thus afford plaintiff the safeguards guaranteed in the Act. See Gross v. Kennedy, D.C.S.D.N.Y.1960, 183 F.Supp. 750, 756, 757.

■ The court has examined the union proceedings in order to test the procedural infirmities alleged by plaintiff to have been violative of the union constitution. Plaintiff's contentions in this respect must be deemed to fall short of being substantiated by the record before this court.

Plaintiff was served by registered mail on July 12, 1960 with a copy of the charges initiated against him by a fellow union member. On August 9, 1960, he was notified, again by registered mail, that a trial on the charges was scheduled for August 23, 1960 at the Council's offices. On August 16, plaintiff demanded a bill of particulars. On August 23, at plaintiff's request, the Trial Board postponed the trial pending submission of the bill of particulars. A bill of particulars was sent to plaintiff by registered mail on September 27, 1960, together with a notice that the trial would commence on October 11, 1960. On October 11, 1960, another postponement was granted at plaintiff's request. The trial was finally held on October 25, 1960; plaintiff had the assistance of a fellow union member as defense counsel and was afforded full opportunity to introduce evidence on his behalf and for cross-examination. Plaintiff was permitted to have a public stenographer at the trial, at his own expense, but he failed, however, to supply the Trial Board with a copy of the stenographer's minutes, despite a previous agreement to do so. (See Section 272(a) of the Brotherhood Constitution, Exhibit 1 attached to the complaint.) On December 5, 1960, a report of the Trial Board, dated December 7, 1960, found plaintiff guilty "as charged for having associated himself with and given support to the Communist Party in direct violation of Section 92(d) and (e) of the Brotherhood Constitution." (See Exhibit A attached to Affidavit of Louis Caputo, p. 5.) This decision was promulgated by a statement dated December 13, 1960. (See Exhibit 5 attached to the complaint.)

The record thus indicates that the plaintiff was fully aware of the charges placed against him; that he was afforded ample time and opportunity to prepare for his defense; and that he was accorded a full and fair hearing. See 29 U.S.C.A. § 411(a) (5).

■ As District Judge Yankwich observed in the Smith case, supra, 181 F. Supp. at page 17:

"* * * All that a union member is entitled to in any controversy between him and the union is a fair hearing. This means only that before any action is taken against him he must be informed of the charges and be given an opportunity to hear them and refute them."

Plaintiff claims that the Trial Board was improperly constituted in that most of its members were not members of the District Council's Executive Board, contrary to Section 269(b) of the Brotherhood Constitution. Section 220(c) of the Brotherhood Constitution provides that the officers of a District Council (President, Vice-President, Recording Secretary, Financial Secretary and Treasurer) shall constitute its Executive Board *where the By-Laws of the District Coun-*

*cil do not designate its Executive Committee.* (See Exhibit 1 attached to the complaint.) Section 269(b) provides that the Trial Board of a District Council shall be the members of its Executive Board. Any member of such board who is a directly interested party to the proceedings "shall refrain from sitting on the trial," and a "disinterested member" shall be appointed in his stead by the President.

The five members of the Trial Board herein appointed by the District Council President were Council members from local unions other than that of the parties involved in the hearing (Local Union 454). (See Affidavit of Louis Caputo, p. 5; Exhibit 5 attached to the complaint.) One of them apparently was the Council's Vice-President. (Compare Affidavit of Max Rosen, p. 5, with Affidavit of Louis Caputo, p. 5.)

Defendant Caputo claims that had the Trial Board consisted of the District Council's " 'Executive Committee,' " the Board would have contained a number of officers who were plaintiff's leading political opponents, for example, the incumbent Secretary-Treasurer, defendant Rarback (who also serves as Recording Secretary). (See Affidavit of Louis Caputo, p. 5.) In such a situation, plaintiff, it is argued, would have asserted he did not receive a fair trial.

It appears, furthermore, that at a referendum held in November 1950, the Council's By-Laws were amended to provide that the " 'Council shall elect sufficient members to act as an Executive Board of District Council 9.' " (See Exhibit B, p. 2, attached to Affidavit of Louis Caputo.) In its answer to the plaintiff's appeal to the General Executive Board, the District Council claimed that pursuant to this amendment, "the Council voted to deem any five members selected as a Trial Board to constitute the Executive Board, and this has been accepted as the procedure for conducting trials for ten years." (Exhibit B, p. 2, attached to Affidavit of Louis Caputo.) These purported facts have evidently not been denied by plaintiff, and if true,

would seem to render the provisions of Section 269(b) inoperative under the circumstances. Plaintiff, moreover, does not accuse the Council members who did serve on the Trial Board with bias or prejudice in determining the charges against him.

The court is unable to find any infirmities in the Trial Board's proceedings to substantiate plaintiff's allegations of fatal procedural irregularities. There is likewise no indication that plaintiff complained about the supposed vagueness or ambiguous character of the accusations against him at the time of the hearing or that his defense was impaired in any way by such indefiniteness.

█ It is not for this court to reexamine the evidence in order to see whether it would have arrived at the same conclusion as did the Trial Board. "[T]here is some evidence which must be accepted as giving a basis for the finding as made and this court is not free to substitute its judgment for that of the Union tribunal with respect to the sufficiency thereof." Dakchoylous v. Ernst, 1952, 203 Misc. 277, 283, 118 N.Y. S.2d 455, 460, affirmed 3rd Dept., 1953, 282 App.Div. 1101, 126 N.Y.S.2d 534. See also Ames v. Dubinsky, 1947, 5 Misc. 2d 380, 409, 70 N.Y.S.2d 706, and cases cited therein.

█ Plaintiff's further argument that Section 92(d) of the Brotherhood Constitution is invalid on its face because violative of his rights under the Act appears to be without merit. Similar provisions have successfully weathered judicial scrutiny. See, e. g., Weinstock v. Ledisky, 1950, 197 Misc. 859, 98 N.Y.S. 2d 85 (same Brotherhood); Dakchoylous v. Ernst, supra, 203 Misc. at page 280.

█ The "Bill of Rights" of union members delineated in 29 U.S.C.A. §§ 411–415, with its broad statement of rights, permits reasonable qualifications thereof in a union's Constitution and By-Laws. See, e. g., 29 U.S.C.A. § 411(a) (1), (2). The potent threat of Communist subversion and exploitation of the American labor movement has been

recognized by Congress and the courts. See, e. g., Labor-Management Reporting and Disclosure Act of 1959, 29 U.S.C.A. § 504; American Communications Ass'n v. Douds, 1950, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925; Weinstock v. Ladisky, supra; Ames v. Dubinsky, supra, 5 Misc. 2d 399–405, 70 N.Y.S.2d 706. The postwar period witnessed a determined and bitter struggle by unions to purge their ranks of those subversive elements subscribing to or supporting causes deemed fundamentally inimical to the genuine interests of American labor.

I must conclude that plaintiff has failed to sustain the burden that is his in seeking the extraordinary remedy of temporary injunctive relief. There has been no clear showing of a right to such redress. His motion must therefore be denied.

The temporary restraining order signed by this court on June 6, 1961, is hereby vacated.

So ordered.