590 F.2d 409
 100 L.R.R.M. (BNA) 2055, 85 Lab.Cas. P 10,967
 William TURNER, Plaintiff-Appellee,
v.
AIR TRANSPORT LODGE 1894 OF INTERNATIONAL ASSOCIATION OF
MACHINISTS AND AEROSPACE WORKERS, AFL-CIO, and
International Association of Machinists
and Aerospace Workers,
AFL-CIO,
Defendants-
Appellants.
 No. 89, Docket 78-7212.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 25, 1978.
Decided Dec. 4, 1978.
 
 Kevin P. Quill, Long Island City, N. Y., for defendants-appellants.
 Burton H. Hall, New York City, for plaintiff-appellee.
 Before WATERMAN and MULLIGAN, Circuit Judges, and WYATT, District judge.*
 PER CURIAM:
 
 
 1
 This appeal by defendant labor unions calls for a decision under the "freedom of speech" provision of the Labor-Management Reporting and Disclosure Act of 1959 (29 U.S.C. § 401 and following; the "LMRDA"). The "freedom of speech" provision is found in 29 U.S.C. § 411(a)(2), part of a subchapter entitled "Bill of Rights of Members of Labor Organizations." The free speech provision gives every union member "the right . . . to express any views, arguments, or opinions." This free speech right of members is almost absolute. The only limitation is that the union is given "the right . . . to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations." 29 U.S.C. § 411(a)(2).
 
 
 2
 The local union expelled plaintiff Turner because of his expression of certain views and opinions. This action was then commenced under the LMRDA, in substance to compel the reinstatement of Turner to membership in the union and for related relief.
 
 
 3
 The District Court, deciding motions by both sides and writing an explanatory opinion, granted Turner relief. This appeal by defendant unions followed.
 
 
 4
 After the appeal was argued and the record studied, we remanded (while retaining jurisdiction of the appeal) for the District Court to make more explicit its decision in a separate judgment (Fed.R.Civ.P. 58). Turner v. Air Transport Lodge 1894, 585 F.2d 1180 (2d Cir. 1978). Such a separate and final judgment was filed in the District Court on November 1, 1978. A motion for summary judgment in favor of Turner was granted; a motion by defendant unions for summary judgment was denied. The local union was directed to reinstate Turner to membership; related declaratory relief was granted.
 
 
 5
 The matter is now before us for disposition on the merits. We affirm the decision below.
 
 
 6
 Turner had been for some time a member of the defendant local union. A charge was made against him that he violated Article L of the union constitution in that he was "advocating Communist ideas and incorporating those ideas with his campaign for Shop Steward."
 
 
 7
 The part of the union constitution Turner was charged with violating was Article L, Section 3, which specifies certain activities by members as misconduct warranting expulsion. The following is the specified activity in the constitution on which the charge against Turner was based:
 
 
 8
 " . . . advocating or encouraging communism, fascism, nazism, or any other totalitarian philosophy or by other actions giving support to these 'philosophies' or 'isms' or to movements or organizations inimical to the I.A.M. or its established policies and laws."
 
 
 9
 There was a hearing before a Trial Committee of the union. Both sides presented evidence. There were no real issues of fact at the union hearing. The evidence indicated that the charge against Turner arose from statements by him in the course of an election of shop stewards, he being a candidate who, among other things, asked for the support of the "rank and file" as opposed to the "union leadership".
 
 
 10
 The Trial Committee found Turner guilty of "improper conduct" within the meaning of the union constitution and recommended his expulsion. The Committee's report makes clear that its finding was based on advocacy of communism by Turner. The union membership voted him guilty and that he be expelled. The notification to Turner by the union was explicit that his "misconduct" was "advocating Communist ideas."The free speech right guaranteed by LMRDA may not be infringed by expelling a member for advocating communist ideas. In this context, it is of no significance whether the word "Communist" be spelled with a capital "C" or with a small "c". The word, in either case, refers to the philosophy of communism.
 
 
 11
 The defendant international union in its constitution could not lawfully make it "misconduct", as it did, for a member to advocate " communism . . . or any other totalitarian philosophy, . . . ". The plain words of the LMRDA forbid such a constitutional provision. The statute pronounces a right of union members to express "Any " opinions (emphasis supplied). This Court has ruled that the statutory right includes the making of false and libellous statements. "The Congress has decided that it is in the public interest that unions be democratically governed and toward that end that discussion should be free and untrammeled and that reprisals within the union for the expression of views should be prohibited." Salzhandler v. Caputo,316 F.2d 445, 451 (2d Cir.), Cert. denied, 375 U.S. 946, 84 S.Ct. 344, 11 L.Ed.2d 275 (1963).
 
 
 12
 The case at bar does not in any way involve the Communist Party of the United States. There was no evidence that Turner was, or ever had been, a member of the Communist Party, nor that he associated with or encouraged the Communist Party. He was never accused of any such things. The only accusation was that he had been "advocating Communist ideas", that is, the philosophy of communism. There was evidence that Turner had explained his "communist views" as "a la Karl Marx, not Breshnev, Mao or Castro." The situation is thus entirely different from that in Rosen v. District Council No. 9 of Brotherhood of Painters, 198 F.Supp. 46 (S.D.N.Y.1961) (Levet, J.), Appeal dismissed, 326 F.2d 400 (2d Cir. 1964), 57 L.R.R.M. 2401 (S.D.N.Y.1964) (Tenney, J.). In those decisions, on which appellants rely, Judge Levet and Judge Tenney upheld the action of a union in disciplining a member for associating with and giving support to the Communist Party. Judge Tenney stated that "the Communist Party is not merely a political party but is a foreign conspiracy and . . . therefore, participation in, or association with, it is not within the protected area of political action." (57 L.R.R.M. at 2405). The Rosen decisions have never been reviewed by this Court and we need not now either approve or disapprove them. An appeal from Judge Levet's denial of a temporary injunction was dismissed because of delay in prosecuting the appeal. In so doing, this Court noted that the Rosen case was one "involving important questions of law" and noted that, after Judge Levet's decision, our opinion in Salzhandler v. Caputo, above cited, had been handed down (326 F.2d at 401).
 
 
 13
 There is the same distinction between the case at bar and Hurwitz v. Directors Guild, 364 F.2d 67 (2d Cir.), Cert. denied, 385 U.S. 971, 87 S.Ct. 508, 17 L.Ed.2d 435 (1966). Hurwitz was decided as a diversity action under New York law; this Court declined to discuss the LMRDA, free speech provision or otherwise (364 F.2d at 71 n. 2). Hurwitz did, however, deal with a non-communist oath requirement in a union constitution; the decision was that the oath requirement was unreasonable because the form of oath was too vague. The Court in Hurwitz did not have occasion to distinguish, as we are doing, between the Communist Party and its members on the one hand and on the other those who, like Turner, advocate the communist philosophy of Karl Marx but who are not members of the Communist Party. It does appear, however, that this Court in Hurwitz was in fact concentrating its attention on the Communist Party and on the dangers that Party posed to labor unions in this country. In Hurwitz, this Court said:
 
 
 14
 " . . . we think it not unreasonable to believe that the Communist Party has in the past demonstrated that it poses a significant threat to the American labor movement. Perhaps in some unions this threat would be sufficiently met by a provision prohibiting Communists from holding union office." (364 F.2d at 74; emphasis supplied)"We do not challenge the union's right to exclude or expel a person from membership if it is established that he has engaged in subversive activity or if it is established that he is a member of the Community Party. See Rosen v. District Council No. 9, 198 F.Supp. 46 (S.D.N.Y.1961)." (364 F.2d at 76; emphasis supplied)
 
 
 15
 The free speech mandate of the LMRDA does allow a union "to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations." There is no evidence that anything Turner did or said caused any harm to the union or interfered in any way with its contractual obligations. Presumably the appellants would claim that the provision of the union constitution under which Turner was accused was justified as one of the "reasonable rules" permitted by the LMRDA. Such a claim could not be accepted. The provision of the union constitution is in flat violation of the right of free speech in the LMRDA. It is so broad that it cannot possibly be found a reasonable means for preventing Communist Party infiltration of the appellant unions. The provision here is broader and more vague than the non-communist oath proscribed in the Hurwitz case.
 
 
 16
 The judgment of the District Court is affirmed.
 
 MULLIGAN, Circuit Judge (concurring):
 
 17
 This case presents the troublesome issue of the clash between the right of a labor organization to purge itself of those members whose activities are inimical to the legitimate goals of trade unionism and the right of the union member to express his opinions freely, without fear of reprisal. Congress grappled with the question in enacting section 101(a)(2) of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA), 29 U.S.C. § 411(a)(2), which provides as follows:
 
 
 18
 Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.
 
 
 19
 It is evident that Congress was anxious to protect the right of union members "to express any views, arguments or opinions," but at the same time it recognized the right of the union to adopt and enforce reasonable rules imposing institutional responsibility upon its members and prohibiting conduct which interfered with the union's legal or contractual obligations. See, e. g., Cox, Internal Affairs of Labor Unions Under the Labor Reform Act of 1959, 58 Mich.L.Rev. 819, 834-35 (1960) (hereinafter "Cox"); Atleson, A Union Member's Right of Free Speech and Assembly: Institutional Interests and Individual Rights, 51 Minn.L.Rev. 403, 433-34 (1967) (hereinafter "Atleson"). Unfortunately, the language employed in the statute to strike the balance is not so pellucid as a mountain lake in springtime. See Atleson, Supra, at 432-35. On this appeal Turner claims that he was improperly expelled for expressing communist views. The union urges that the advocacy of those views was institutionally irresponsible and therefore the union constitutional provision prohibiting such advocacy was properly within the limiting proviso of section 411(a)(2). Our problem is to interpret the language of Congress which both giveth and taketh away the rights of the parties to this appeal.
 
 
 20
 The initial question is whether a union rule broadly barring a member's advocacy of totalitarian philosophies falls within the protective language of section 411(a)(2). In resolving this issue it is crucial to note the statutory requirement that a labor organization's rules pertaining to members' responsibility toward the union be reasonable.[1] The rule at bar is Article L, section 3 of the union constitution which prohibits a member from
 
 
 21
 . . . advocating or encouraging communism, fascism, nazism, or any other totalitarian philosophy, or by other actions giving support to these "philosophies" or "isms" or to movements or organizations inimical to the (union) or its established policies and laws.
 
 
 22
 This provision, in my view, should be construed as unreasonable within the meaning of section 411(a)(2). It prohibits advocacy of undefined philosophies and "isms" as well as unspecified actions supporting them. The provision is so broad, vague and indefinite that it provides completely inadequate guidance to union members as to just what is proscribed. See Hurwitz v. Directors Guild of America, 364 F.2d 67, 75-76 (2d Cir.), cert. denied, 385 U.S. 971, 87 S.Ct. 508, 17 L.Ed.2d 435 (1966). Moreover, the provision clearly goes beyond the scope of section 411(a)(2) by barring, for example, a member's participation in movements or organizations inimical to the "established policies and laws" of the union. This language can be construed to prohibit precisely what section 411(a)(2) is supposed to protect the right of the member to freely express his opposition to union policies and laws. E. g., Newman v. Local 1011, Communications Workers of America, 570 F.2d 439, 444 (2d Cir. 1978); Salzhandler v. Caputo, 316 F.2d 445, 448-49 (2d Cir.), cert. denied, 375 U.S. 946, 84 S.Ct. 344, 11 L.Ed.2d 275 (1963); see Hurwitz v. Directors Guild of America, supra, at 75. Therefore, I believe the judgment below should be affirmed simply on this basis the rule relied upon to support Turner's ouster is not "reasonable" within the mandate of section 411(a)(2).
 
 
 23
 At the same time I would not hold that the advocacy of all views is immunized by section 411(a)(2). Salzhandler v. Caputo, supra, at 450 n. 8; see Hurwitz v. Directors Guild of America, supra, at 76. That section, however infelicitous its language, permits the union to enforce reasonable rules designed to protect the union as a labor organization and to prevent interference with the performance of the union's legal or contractual obligations. Thus, while criticism of union leadership or practices or policies is fully protected, the encouragement of activities or organizations which are fundamentally inimical to trade unionism is beyond the pale. Atleson, Supra, at 472; see Cox, Supra, at 834-35. The distinction can be elusive and, assuming a reasonably drawn union rule, complying with the statutory distinction requires some analysis of what the member is actually advocating.
 
 
 24
 In the instant case, Turner is an avowed and activist member of the Progressive Labor Party. The goals of that party, which are presumably accurately reported in its news organ, "Challenge The Revolutionary Communist Newspaper", include the violent overthrow of the capitalist system, the dictatorship of the proletariat, and the organization of communist led groupings in every shop to encourage "strikes and marches." The familiar communist rhetoric from the "Challenge" is set forth in the margin.[2] Significantly, Turner freely conceded his adherence to the aims of the Progressive Labor Party and testimony at the hearing established his support for and advocacy of these means and objectives. Compare United States v. Brown, 381 U.S. 437, 455-56, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965). This encouragement of the use of union power for the primary objective of violent revolution seems clearly to me to be fundamentally inimical to the interests of the union as an institution and would certainly jeopardize its legal obligations. See American Communications Association v. Douds, 339 U.S. 382, 388-89, 70 S.Ct. 674, 94 L.Ed. 925 (1950).
 
 
 25
 Several cases in this circuit have recognized that the Communist Party, by espousing goals substantially equivalent to those mentioned above, has demonstrated that it poses a serious threat to the American labor movement. Hurwitz v. Directors Guild of America, supra; Rosen v. District Council No. 9 of Brotherhood of Painters (Rosen II), 57 L.R.R.M. 2401, 2405 (S.D.N.Y.1964) (citing several New York State court cases to the same effect); Rosen v. District Council No. 9 of Brotherhood of Painters (Rosen I), 198 F.Supp. 46, 49-50 (S.D.N.Y.1961), appeal dismissed, 326 F.2d 400 (2d Cir. 1964). Moreover, the legislative history of the LMRDA compels the conclusion that an important reason for the addition of the proviso to section 411(a)(2) was so that unions would not be prevented from expelling Communists from membership.[3] See II Legislative History of the Labor-Management Reporting & Disclosure Act of 1959, 1231(3), 1233(3), 1234(1) (comments of Senators Aiken, Clark, Kennedy, and McClellan) (N.L.R.B. ed. 1959); Hurwitz v. Directors Guild of America, supra, at 74; Rosen II, supra, at 2405; Atleson, Supra, at 472.
 
 
 26
 We assume that this congressional concern was prompted by the demonstrated ability of the Communist Party to subvert unions for revolutionary purposes which are sharply divergent from the legitimate goals of trade unionism. See American Communications Association v. Douds, supra, 339 U.S. at 388-89, 70 S.Ct. 674; Hurwitz v. Directors Guild of America, supra, at 76; Rosen II, supra, at 2405, 2406 and cases there cited; Rosen I, supra, at 49-50.
 
 
 27
 Thus, if Turner had been an active member of the Communist Party and had been charged with such conduct as distributing inflammatory Party literature it seems evident that this would support his ouster under a properly phrased union regulation. However, that is not the case before us. Turner was merely charged with the expression of communist views. Moreover, Turner is not a member of the Communist Party, which has a demonstrated record of successful infiltration and subversion of trade unions. He is a member of the Progressive Labor Party and the record is barren of any indication of its size, influence or potential to accomplish its revolutionary goals. No matter how offensive Turner's views may be, his mere expression of them, as far as the record before us is concerned, presents no real or serious threat to the integrity of the labor organization or to its ability to perform its legal and contractual obligations. See Hurwitz v. Directors Guild of America, supra, at 76; Atleson, Supra, at 457.
 
 
 28
 For these reasons I vote to affirm.
 
 
 
 *
 Inzer B. Wyatt, of the Southern District of New York, sitting by designation
 
 
 [1]
 Of course, since union constitutions and rules are formulated and enforced by the union, a private entity, no federal constitutional right of free speech is here involved. E. g., Wirtz, Government by Private Groups, 13 La.L.Rev. 440, 441, 446-49 (1953); see Rothman, Legislative History of the "Bill of Rights" of Union Members, 45 Minn.L.Rev. 199, 201-02 (1960) (hereinafter "Rothman")
 
 
 [2]
 The following are excerpts from the "Challenge":
 In order to achieve socialism, the capitalist system, the bosses and their dictatorial government must be crushed. This cannot be accomplished peacefully through elections.
 It can only happen when the majority of the exploited unite behind communist leadership, violently overthrow the bosses, and install a new government of revolutionary workers the dictatorship of the proletariat.
 Members of the Progressive Labor Party are devoted to this goal. They dedicate their lives to actively building, promoting and organizing for the cause of revolutionary communism.
 Unless we can organize communist-led groupings in every shop lay-offs will continue. Unless we have these groupings more and more abuses will be heaped upon workers, and we will have to take it. Communist led groupings (fractions) (sic) can turn every shop into a battlefield. This will let the bosses know that they can't rely on their union goons to betray and lull workers every time they attack. Strikes and marches will be tomorrow's rule. Workers will march to war against those who oppress them. It will be the ruling class who will have to retreat and give ground to the working class.
 Every campus must also be turned into a fortress against the bosses' cutbacks and tuition hikes. Administration buildings must be seized and held until the cutbacks are reversed. Classes must be converted into centers of struggles against bosses' racist and anti-working class courses. Racist texts must be scrapped along with the racist teachers. Pro-boss ideas must be refuted and the schools become centers for communist organizing. On every campus we must force the administrators to bow to the just wishes of the students and honest faculty. Strikes must be organized to enforce our will.
 
 
 [3]
 For analyses of the congressional compromise that led to the insertion of the proviso into section 411(a)(2), see Cox, Supra; Rothman, supra