*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0284P (6th Cir.)
File Name: 02a0284p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED FOOD AND
COMMERCIAL WORKERS
INTERNATIONAL UNION
LOCAL 911 et al.,                            No. 00-4544
     *Plaintiffs-Appellants,*


     *v.*


UNITED FOOD AND
COMMERCIAL WORKERS
INTERNATIONAL UNION et al.,
     *Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Ohio at Toledo.
No. 99-07713—David A. Katz, District Judge.

Argued: April 24, 2002

Decided and Filed: August 22, 2002

Before: DAUGHTREY and MOORE, Circuit Judges;
SIMPSON, District Judge.*

———————————

*The Honorable Charles R. Simpson III, United States District Judge
for the Western District of Kentucky, sitting by designation.

1

—————————————

**COUNSEL**

**ARGUED:** Ted Iorio, KALNIZ, IORIO & FELDSTEIN, Toledo, Ohio, for Appellants. Melvin S. Schwarzwald, SCHWARZWALD & MCNAIR, Cleveland, Ohio, for Appellees. **ON BRIEF:** Ted Iorio, Christine A. Reardon, Donato S. Iorio, KALNIZ, IORIO & FELDSTEIN, Toledo, Ohio, for Appellants. Melvin S. Schwarzwald, Eben O. McNair, IV, James G. Porcaro, SCHWARZWALD & MCNAIR, Cleveland, Ohio, for Appellees.

MOORE, J., delivered the opinion of the court, in which DAUGHTREY, J., joined. SIMPSON, D. J. (p. 17), delivered a separate opinion concurring in part and dissenting in part.

—————————————

**OPINION**

—————————————

KAREN NELSON MOORE, Circuit Judge. This case involves a dispute between an international labor organization and one of its affiliates. Plaintiffs-Appellants United Food and Commercial Workers ("UFCW") International Union Local 911 and its individual members ("Local 911") appeal the district court's dismissal of their complaint against Defendants-Appellees UFCW International Union ("International Union") and its officers for violations of the Labor-Management Relations Act ("LMRA"), 29 U.S.C. §§ 141-187, and the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA"), 29 U.S.C. §§ 401-531. Because relief could be granted on the LMRA claim and one of the LMRDA claims, we **AFFIRM** in part and **REVERSE** in part the district court's decision and **REMAND** for further proceedings consistent with this opinion.

## I. BACKGROUND

Local 911, a chartered affiliate of the International Union, represents approximately 12,000 workers in the meat packing, food processing, and retail industries of northwestern Ohio. Meijer, Inc. ("Meijer"), is a Michigan-based retail chain that sells groceries and general merchandise. September 19, 1998, marked the expiration of Local 911's collective bargaining agreement with Meijer for four Meijer stores in the Toledo, Ohio, area. The negotiations that ensued between Local 911 and Meijer resulted in a "last, best and final offer" by Meijer, which Local 911 rejected by a margin of nine to one. Joint Appendix ("J.A.") at 94-95 (First Am. Compl. ("FAC") at ¶¶ 23-25). Local 911's subsequent attempt to boycott Meijer's Toledo stores was overruled by the International Union. By December 7, 1998, however, Local 911 and Meijer managed to reach and ratify a successor collective bargaining agreement, which "contained improvements over and above [Meijer's previous offers]." J.A. at 98 (FAC at ¶ 40).

At about this time, Meijer was building a new store in Bowling Green, Ohio. On February 1, 1999, David W. Gelios ("Gelios"), the president and chief executive officer of Local 911, wrote to Douglas H. Dority ("Dority"), the president of the International Union, about Local 911's future representation of union members at the new Meijer store, noting the store's location "in the middle of Local 911's jurisdiction." J.A. at 269. Dority decided to assign the store to the jurisdiction of Local 1059, which covers central and southeastern Ohio. Local 911 immediately appealed Dority's decision under the UFCW International Union Constitution ("UFCW Constitution"). After a hearing, the UFCW International Executive Board denied the appeal.

On November 19, 1999, Local 911 filed a complaint in the district court, alleging that the International Union had (1) denied it due process in violation of § 101(a)(5) of the LMRDA, (2) abridged its free speech and assembly rights in violation of § 101(a)(2) of the LMRDA, and (3) breached the

UFCW Constitution in violation of § 301 of the LMRA. On March 14, 2000, with the leave of the district court, Local 911 filed a first amended complaint, alleging in addition to the claims raised in its original complaint that the International Union had breached its fiduciary duty to Local 911 in violation of § 501 of the LMRDA. Local 911 sought various declaratory judgments, a preliminary and permanent injunction, restoration of jurisdiction over the Meijer store in Bowling Green, various damages in excess of one million dollars, and costs.

On March 28, 2000, the International Union filed a motion to dismiss Local 911's complaint for improper venue and failure to state a claim upon which relief could be granted. On October 31, 2000, the district court granted the International Union's motion on the latter ground. *United Food & Commercial Workers Union Local No. 911 v. United Food & Commercial Workers Int'l Union*, 119 F. Supp. 2d 724, 729, 734-35 (N.D. Ohio 2000). This timely appeal followed.

## II. ANALYSIS

We review de novo a district court's dismissal of a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 619 (6th Cir. 2002). In doing so, we "accept all well-pleaded factual allegations of the complaint as true and construe the complaint in the light most favorable to the plaintiff." *Id.* However, we "need not accept as true legal conclusions or unwarranted factual inferences." *Mich. Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 533 (6th Cir. 2002) (quotation omitted). We will affirm a dismissal "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Inge*, 281 F.3d at 619 (quoting *Hishon v. King & Spaulding*, 467 U.S. 69, 73 (1984)).

## CONCURRING IN PART, DISSENTING IN PART

SIMPSON, District Judge, concurring in part and dissenting in part. I concur with the majority opinion except for Section II.A.3., from which I respectfully dissent. In *Corea v. Welo*, 937 F.2d 1132, 1143 (6th Cir. 1991), we determined that:

The primary purpose of 29 U.S.C. § 501(a) is to ensure that union officials do not violate their fiduciary duties to the members of their organization by engaging in self-dealing or the misuse of union funds, which they hold in trust. However, the statute is not meant as a vehicle for judicial oversight of union activity, but only as a means of redressing unreasonable and arbitrary actions by union officials. The federal courts do not sit as a "super review" board of internal union grievances unless there is evidence of impropriety in the proceedings.

In essence, this action constitutes a dispute between Local 911 and its national organization over a jurisdictional assignment, namely the right to represent employees at a Meijer store in Bowling Green, Ohio. The loss of rights the local union faces is thus economic rather than the "invaluable and irreparable loss of democratic rights" this Circuit requires for a § 501 action. *Corea*, 937 F.2d at 1144 (citing *Wade v. Teamsters Local 247*, 527 F.Supp. 1169, 1178 (E.D. Mich. 1981)). The majority's reversal of the § 501 claim will require the district court to sit as a "super review board" to determine whether Local 911 should have been granted jurisdiction over the Meijer store. Such an exercise is unnecessary given the admittedly unlikely inferences the majority opinion requires and, more importantly, is contrary to Sixth Circuit precedent. For these reasons, I would affirm the district court's dismissal of the § 501 claim.

jurisdiction — in the event that a local affiliate fails to obtain authorization before engaging in economic action.  This argument may read too much into Article 23.  In any event, Local 911's Article 23 claim rests on the premise that the denial of jurisdiction constituted a "penalty."  J.A. at 112 (FAC at ¶ 104).  Given our holding in Part II.A.1 that Dority's jurisdictional decision was not disciplinary in nature, the Article 23 claim is not viable.

Finally, Local 911 claims that the International Union violated Article 31(A), which states that "[t]he International President, in consultation with the International Secretary-Treasurer, shall determine the jurisdiction of Local Unions and may modify the jurisdiction of Local Unions from time to time, subject to an appeal to the International Executive Board."  J.A. at 185.  The parties mainly focus, as did the district court, on the extent of Dority's discretion.  However, this focus misses the fact that Article 31(A) requires the International President at least to consult the International Secretary-Treasurer when making jurisdictional determinations.  A viable breach of contract claim could thus arise from a failure to consult.  The FAC explicitly alleges that Dority made his decision without consulting Joseph T. Hansen ("Hansen"), the International Secretary-Treasurer. J.A. at 111 (FAC at ¶ 102).  Dority claims that he did consult Hansen, and further discovery could perhaps establish that he is telling the truth.  However, at this stage of the proceedings, we must accept Local 911's allegation as true and reverse the district court's dismissal of this claim.

### III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** in part and **REVERSE** in part the decision of the district court and **REMAND** for further proceedings consistent with this opinion.

### A.  The LMRDA Claims

In *Finnegan v. Leu*, 456 U.S. 431 (1982), the Supreme Court observed that the LMRDA "was the product of congressional concern with widespread abuses of power by union leadership."  *Id.* at 435.  Congress ultimately adopted amendments to the LMRDA that were "aimed at enlarged protection for members of unions paralleling certain rights guaranteed by the Federal Constitution":

> The amendments placed emphasis on the rights of union members to freedom of expression without fear of sanctions by the union, which in many instances could mean loss of union membership and in turn loss of livelihood.  Such protection was necessary to further the [LMRDA]'s primary objective of ensuring that unions would be democratically governed and responsive to the will of their memberships.

*Id.* at 435-36.  The scope of the LMRDA's protection, however, does not extend as far as that of the Constitution.  *United Steelworkers of Am. v. Sadlowski*, 457 U.S. 102, 109 (1982).  For example, union rules must only be "reasonable" to be valid under § 101(a)(2), which guarantees free speech and assembly rights to union members, whereas governmental regulations must further a compelling governmental interest and be narrowly tailored to be valid under the First Amendment.  *Id.* at 111.

### 1.  Section 101(a)(5)

Section 101(a)(5) of the LMRDA provides:

> No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

29 U.S.C. § 411(a)(5). In *Breininger v. Sheet Metal Workers Int'l Ass'n Local Union No. 6*, 493 U.S. 67 (1989), the Supreme Court stated "that by using the phrase 'otherwise discipline,' Congress did not intend to include all acts that deterred the exercise of rights protected under the LMRDA, but rather meant instead to denote only punishment authorized by the union as a collective entity to enforce its rules." *Id.* at 91. In other words, a union member is "disciplined" only when the union takes action "under color of the union's right to control the member's conduct in order to protect the interests of the union or its membership." *Id.* (quotation omitted).

Local 911 contends that its members were disciplined in violation of the LMRDA when Dority assigned the Meijer store at Bowling Green to the jurisdiction of Local 1059 rather than Local 911. This decision was allegedly made "in a calculated attempt to retaliate against [Local 911] for [its] aggressive posture" during the negotiations with Meijer over the collective bargaining agreement for the Toledo stores. J.A. at 410. We consider Local 911's choice of words somewhat curious given the *Breininger* Court's determination that the LMRDA's "specifically enumerated types of discipline — fine, expulsion, and suspension — imply some sort of established disciplinary process rather than ad hoc retaliation by individual union officers." *Breininger*, 493 U.S. at 91-92. In a footnote, the Court clarified that it "d[id] not imply that 'discipline' may be defined solely by the type of punishment involved, or that a union might be able to circumvent §§ 101(a)(5) and 609 by developing novel forms of penalties different from fines, suspensions, or expulsions." *Id.* at 92 n.15. However "novel" the denial of jurisdiction might be as a form of punishment, it seems, at least in our view, to be much closer to ad hoc retaliation than to "punishment authorized by the union as a collective entity to enforce its rules." *Id.* at 91. We therefore hold that the district court did not err in dismissing this claim.

Another difficulty with Local 911's § 101(a)(5) claim is that the alleged punishment did not result from an established

at 13. The International Union, however, emphasizes the negative implications of a contrary decision, pointing out Dority's concern that "representation by any UFCW affiliate [other than Local 1059] would be highly unlikely" and belief that "working conditions would be better with Local 1059 than with no union at all." Appellees' Br. at 35. In other words, the International Union believes that assigning the Bowling Green store to Local 1059's jurisdiction furthered both the objectives of organizing the future employees at that store and obtaining the status of exclusive bargaining representative.

We reiterate that Local 911's § 301 claim is one for breach of contract. As such, it involves the International Union and Local 911 as parties to the UFCW Constitution. The International Union appears to maintain that assigning the Bowling Green store to Local 911's jurisdiction would have constituted an even greater breach of its duty to prospective members at the new store. This duty, however, may also have been prospective. Although the Preamble to the UFCW Constitution speaks in terms of elevating workers, Article 2 states that "[t]he object of this International Union shall be the elevation of the position of its members." J.A. at 163. We take Local 911's position to be that the International Union violated Article 2 by harming the position of its current members, wholly apart from how a different decision might have harmed the position of its prospective members. Because relief could be granted if Local 911 proves this breach of contract, we believe that the § 301 claim for a violation of Article 2 is viable.

Article 23 describes the procedures for accepting or rejecting collective bargaining contracts and engaging in strikes or other economic action, which must be authorized in advance by the International Executive Committee. Art. 23(E)(1). It further provides that the International Union will not distribute strike or defense benefits unless local unions obtain prior authorization. Art. 23(F)(2). Local 911 argues in the negative that Article 23 allows the International Union only to refuse strike or defense benefits — but not to deny

"Courts are reluctant to substitute their judgment for that of union officials in the interpretation of the union's constitution, and will interfere only where the official's interpretation is not fair or reasonable." *United Bhd. of Carpenters & Joiners of Am., Dresden Local No. 267 v. United Bhd. of Carpenters & Joiners of Am., S. Cent. Ohio Dist. Council*, 992 F.2d 1418, 1423 (6th Cir. 1993) (quotation omitted). Therefore, we pay "substantial deference" to a union's interpretation of its own constitution. *Id.* However, in cases involving unconscionable conduct, we have stated that "bad faith would strip away the protection from judicial interference to which the union would be entitled otherwise." *UAW Local 594 v. Int'l Union, UAW*, 956 F.2d 1330, 1338 (6th Cir. 1992).

Observing that Dority as "the International president had ample discretion [under Article 31(A) of the UFCW Constitution] in the assignment of jurisdiction," the district court dismissed Local 911's § 301 claim on the ground that Dority's decision "was well within the bounds of reasonableness and not based on bad faith." *United Food*, 119 F. Supp. 2d at 732. The district court did not otherwise discuss the parties' varying interpretations of the UFCW Constitution.

Local 911's § 301 claim is based on alleged violations of Articles 2, 23, and 31 of the UFCW Constitution, as well as the Preamble, which declares that the International Union was "created in order to elevate the social and economic status of workers." J.A. at 163. Article 2 includes the following among the International Union's objectives: (1) "to organize, unite, and assist persons . . . for the purpose of improving wages, hours, benefits, and working conditions on local, national, or international levels" and (2) "to obtain the status of exclusive bargaining representative of persons employed within the jurisdiction of the International Union." J.A. at 163. Local 911 argues that the former objective was hindered by "Dority's denial of jurisdiction to Local 911," which "reward[ed] Meijer with leverage to be used against Local 911's members at the bargaining table." Appellants' Br.

union disciplinary process. *Cf. Konen v. Int'l Bhd. of Teamsters, Local 200*, 255 F.3d 402, 410 (7th Cir. 2001) (holding that the plaintiff was not disciplined in violation of the LMRDA because he "was never subjected to official Union discipline . . . and there is no evidence that his membership rights or status have been diminished in any way"). Although Dority charged Local 911 with various violations of the UFCW Constitution, he did not undertake any formal disciplinary action against individual members. For example, in an October 8, 1998, letter to Gelios, Dority simply directed Local 911 to cease an unauthorized boycott of the Meijer stores in Toledo. He did not fine, suspend, or expel any member of Local 911. Therefore, we affirm the district court's dismissal of the § 101(a)(5) claim.

## 2. Section 101(a)(2)

Section 101(a)(2) of the LMRDA guarantees to union members "the right to meet and assemble freely with other members; and to express any views, arguments, or opinions." 29 U.S.C. § 411(a)(2). As noted above, the statute provides that the exercise of this right may be governed by union rules that are "reasonable." *Id.* Local 911 asserts that the International Union violated "the 'almost absolute' right of free speech secured by § 101(a)(2)," Appellants' Br. at 23, by (1) placing unreasonable restrictions on boycotting and picketing the Toledo stores and (2) retaliating against Local 911 through a "punitive removal of jurisdiction" over the Bowling Green store, which "abridged and cast a chilling effect upon the free speech and assembly rights of all individual Local 911 members." J.A. at 108-09 (FAC at ¶¶ 84-88).

We believe that Local 911's § 101(a)(2) claim rests on a misunderstanding of the rights guaranteed by the LMRDA. After stating that "First Amendment principles may be helpful" but "not controlling," the *Sadlowski* Court discussed Congress's intent in enacting § 101(a)(2):

Congress adopted the freedom of speech and assembly provision in order to promote union democracy. It

recognized that democracy would be assured only if union members are free to discuss union policies and criticize the leadership without fear of reprisal. Congress also recognized that this freedom is particularly critical, and deserves vigorous protection, in the context of election campaigns.

*Sadlowski*, 457 U.S. at 111-12 (internal citations omitted). We have subsequently understood § 101(a)(2) in these more limited terms. *See Corea v. Welo*, 937 F.2d 1132, 1140 (6th Cir. 1991) ("Section 101(a)(2) of [the] LMRDA guarantees that union members have the right to assemble freely with other members and to express their views on business properly before a meeting of the union membership."); *Tucker v. Bieber*, 900 F.2d 973, 977 (6th Cir.) ("Title I [of the LMRDA] protects rank and file union members who speak out against union leaders or who seek elective union offices."), *cert. denied*, 498 U.S. 848 (1990).[1] For example, in *Black v. Ryder/P.I.E. Nationwide, Inc.*, 970 F.2d 1461 (6th Cir. 1992), a member of Teamsters Local 519 who had been disciplined for protesting against the corruption of local union officials was able to bring a successful retaliation claim under the LMRDA. *Id.* at 1469, 1471.

The facts of this case as alleged by Local 911 simply do not implicate union democracy. The "restrictions" on boycotting and picketing resulted from Local 911's failure to obtain prior authorization, as required by the UFCW Constitution. Local

---

[1]Local 911 heavily relies on *Turner v. Air Transport Lodge 1894 of Int'l Ass'n of Machinists and Aerospace Workers*, 590 F.2d 409 (2d Cir. 1978) (per curiam), *cert. denied*, 442 U.S. 919 (1979), which stated that "th[e] free speech right of [union] members is almost absolute" while recognizing the "reasonable rules" limitation. *Id.* at 410. However, as the International Union notes, context is key. Appellees' Br. at 30 n.14. *Turner* involved a candidate for shop steward who was expelled from his union for "advocating Communist ideas" during his campaign; the Second Circuit held that his expulsion violated the LMRDA. *Turner*, 590 F.2d at 410-11; *cf. Maddalone v. Local 17, United Bhd. of Carpenters & Joiners of Am.*, 152 F.3d 178, 183 (2d Cir. 1998) (reading the scope of § 101(a)(2)'s protection as "concerning candidates and union policies").

As for Dority's sending a copy of the October 8 letter to Meijer, we conclude that this exchange could not have caused any loss of Local 911's democratic rights. In *Wade*, the failure of union officials to hold monthly membership meetings was found actionable under § 501. *Wade*, 527 F. Supp. at 1177. In this case, the letter simply directed Local 911 not to take economic action without obtaining prior authorization. It did not prohibit or prevent Local 911 from exercising its democratic rights to seek the necessary authorization in the future. At most, it informed Meijer that the International Union would support only those actions of Local 911 that were authorized, which is entirely in keeping with the International Union's status as a governing body. Therefore, we affirm the district court's dismissal of the breach of fiduciary duty claim as it relates to the October 8 letter.

**B. The LMRA Claim**

Under § 301 of the LMRA, labor organizations may sue each other in federal court for breach of contract. 29 U.S.C. § 185. The UFCW Constitution is a contract between Local 911 and the International Union. *See Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 99 (1991). Local 911 alleges that Dority and the International Union violated the UFCW Constitution by assigning the Meijer store in Bowling Green to the jurisdiction of Local 1059 rather than Local 911, which "carv[ed] jurisdiction to favor an employer." Appellants' Br. at 13.

---

We emphasize that we must accept Local 911's allegations as true at this stage of the proceedings. *Cf. Corea*, 937 at 1133-34 (affirming a grant of summary judgment); *Ward*, 527 F. Supp. at 1171 (granting summary judgment). Therefore, the question before us is not whether Dority should have granted jurisdiction to Local 911 but whether relief could be granted to Local 911 assuming that Dority's decision to grant jurisdiction to Local 1059 was unreasonable, arbitrary, or improper. We leave the determination of other questions to the further proceedings for which we remand this case.

future without first obtaining the appropriate authorization." J.A. at 251.

Construing the FAC and the attached documents in the light most favorable to Local 911, we understand this breach of fiduciary duty claim to be based on a factual allegation that Local 911 would have organized the employees at the Bowling Green store and negotiated a more favorable contract but for Dority, who improperly assigned the store to the jurisdiction of Local 1059, per Meijer's instructions, because the latter affiliate would not bargain as hard as Local 911 had in Toledo. Local 911's ability to unionize the Bowling Green store is thus the key to this case, for Dority's alleged breach lies in checking the bargaining strength that Local 911 would have gained from adding the employees at that store to its membership. Although this scenario strikes us as unlikely, it is the only one that we can conceive in which Dority would have breached his fiduciary duty to union members. Otherwise, the parties' dispute is essentially one over strategy: Local 911 believes that hard bargaining leads to better results, as demonstrated by the collective bargaining agreement that was finally reached for the Meijer stores in Toledo, while Dority avers that such a campaign would have backfired for the Meijer store in Bowling Green and effectively left the employees with no representation at all. The facts as posited above, however, suggest that Dority acted unreasonably and arbitrarily in denying jurisdiction of the Bowling Green store to Local 911. Because relief could be granted on these facts, we reverse the district court's dismissal of the breach of fiduciary duty claim as it relates to Dority's alleged motivation for assigning the Bowling Green store to the jurisdiction of Local 1059 instead of Local 911.[5]

---

[5] The dissent maintains that the district court's dismissal of this claim should be affirmed because Local 911's dispute is over jurisdiction and its action concerns a loss of economic rather than democratic rights. As alleged in Local 911's pleadings, however, Dority's decision to assign the Bowling Green store to the jurisdiction of Local 1059 was improperly influenced by Meijer. Meijer's influence on union activity, in turn, would undoubtedly deny Local 911 the democratic right to fair representation.

911 does not explain why the requirement of prior authorization is unreasonable. Furthermore, the impetus of the thwarted boycott was Meijer's employment practices, not the International Union's authorization process. In other words, Local 911 might have had a viable § 101(a)(2) claim if the International Union had abridged the right of its members to protest union policy concerning the authorization of economic action. As for the denial of jurisdiction, Local 911 simply alleges "a chilling effect." J.A. at 109 (FAC at ¶ 88). The connection between the assignment of jurisdiction and union members' exercise of free speech and assembly rights, however, is tenuous at best. The UFCW Constitution grants considerable discretion to the International President in the making of jurisdictional determinations, a fact that Local 911 recognizes in its bylaws. Therefore, we affirm the district court's dismissal of the § 101(a)(2) claim.

### 3. Section 501

Section 501 of the LMRDA provides a cause of action against the officers and agents of labor organizations who breach certain fiduciary duties. 29 U.S.C. § 501(a). Like the district court, we keep the following in mind:

> The primary purpose of 29 U.S.C. § 501(a) is to ensure that union officials do not violate their fiduciary duties to the members of their organization by engaging in self-dealing or the misuse of union funds, which they hold in trust. However, the statute is not meant as a vehicle for judicial oversight of union activity, but only as a means of redressing unreasonable and arbitrary actions by union officials. The federal courts do not sit as a "super review" board of internal union grievances unless there is evidence of impropriety in the proceedings.

*Corea*, 937 F.2d at 1143. It bears repeating, especially in the context of this case, that § 501 violations generally involve "unreasonable and arbitrary actions" such as "self-dealing or the misuse of union funds." *Id.* We have recognized, however, that § 501 "contains nonfinancial aspects" and may be violated when "union officials [cause] union members to

suffer 'an invaluable and irreparable loss of democratic rights.'" *Id.* at 1144 (quoting *Wade v. Teamsters Local 247*, 527 F. Supp. 1169, 1178 (E.D. Mich. 1981)).

Local 911's first § 501 claim alleges misuse of union funds and relates to an offer by Dority "to give Local 911 the 'lost dues' from the Bowling Green store, with no servicing obligation, and . . . monthly payments which would have to be designated as organizing funds on the books." J.A. at 420. According to Gelios, Dority offered these "organizing" funds to persuade Local 911 to drop its objection to an assignment of jurisdiction that resulted in "a contract [for the Bowling Green employees] with wages and working conditions inferior to any of Local 911's Meijer contracts." J.A. at 420-21. As noted by the district court, the pleadings "do[] not indicate that any money was ever actually transferred to Local 911." *United Food*, 119 F. Supp. 2d at 734.

Although we accept Local 911's factual allegations as true, we believe that the district court did not err in dismissing the claim for misuse of union funds. Local 911 argues that Dority is liable under § 501 because the alleged purpose behind his offer — or "attempted payoff," Appellants' Br. at 28 — was inconsistent with the International Union's stated objective of elevating the position of its members. Breaches of fiduciary duty, however, involve injuries, *see, e.g.*, *Strock v. Pressnell*, 527 N.E.2d 1235, 1243 (Ohio 1988), and Local 911 does not allege that Dority's offer per se caused any injury to the International Union or its members. In other words, Local 911's refusal of the offer prevented Dority from actualizing his alleged intent to misuse union funds.

Local 911's remaining allegations concern the International Union's relationship with Meijer in general and Dority's dealings with Meijer in particular.[2] According to Local 911,

---

[2] In its brief, Local 911 avoids singling out Dority, instead charging the International Union with various "financial improprieties." Appellants' Br. at 28. Section 501, however, applies to "officers of labor organizations . . . [who] occupy positions of trust." 29 U.S.C. § 501. The

Dority "has subordinated the International Union to Meijer's wishes," J.A. at 419, to the point where Meijer "dictate[s] matters of internal union policy," J.A. at 412-13, including Dority's decision to assign the Bowling Green store to the jurisdiction of Local 1059.[3] Local 911 maintains that this subservience to Meijer prioritizes ensuring the flow of dues money[4] over vigorously representing the union members who pay those dues. Local 911 also alleges that Dority undercut Local 911 in violation of § 501 when he sent "Earl Holton, a high-ranking official of Meijer," J.A. at 96 (FAC at ¶ 29), a copy of an October 8, 1998, letter that ordered Local 911 not to boycott Meijer or to "take any other economic action in the

---

FAC charged Dority and Region 4 with § 501 violations. J.A. at 117 (FAC at ¶ 129). Because Local 911 does not appeal the district court's dismissal of the claim against Region 4, Appellants' Br. at 4 n.3, we will discuss Local 911's allegations against Dority only.

[3] In a September 29, 1999, letter to Gelios, while Meijer and Local 911 were negotiating a successor collective bargaining agreement for the four Toledo stores, a Meijer executive stated that "based on the history with Local 911 we believe that it would be in the best interest of the company to work with a different local in new units." J.A. at 406.

[4] Although the basis for this allegation is not plainly evident from the parties' briefs, it appears that there were alternate routes to Meijer's recognition of an International Union affiliate as the collective bargaining representative of its employees at the Bowling Green store (which would presumably result in the payment of dues money to the International Union): (1) the National Labor Relations Board ("NLRB") could have conducted a secret ballot election or (2) Meijer could have waived its right to an NLRB election and voluntarily recognized a union through card check recognition, as it presumably did in recognizing Local 1059. *See generally* THE DEVELOPING LABOR LAW 545-86, 679-726 (Patrick Hardin & John E. Higgins, Jr. eds., 4th ed. 2001). Under card check recognition, union organizers present an employer with union authorization cards signed by a majority of the employees. *Id.* at 693-97. Dority believed that Meijer would not grant card check recognition to Local 911 and that Local 911 would not succeed in an NLRB election. Gelios, however, contends "that Meijer holds back recognition to exert leverage, and expects consideration in return for recognition without election." J.A. at 418.