Anthony J. CALABRESE et al.,
Plaintiffs,

v.

The UNITED ASSOCIATION OF JOUR-
NEYMEN AND APPRENTICES OF
The PLUMBING AND PIPE FITTING
INDUSTRY OF The UNITED STATES
AND CANADA et al., Defendants.

Civ. A. No. 123–61.

United States District Court
D. New Jersey.

Dec. 21, 1962.

John A. Craner, Elizabeth, N. J., for plaintiffs.

Brogan & Wolff, Jersey City, N. J., for defendant United Association; Patrick O'Donaghue, Washington, D. C., of counsel.

Edward F. Zampella, Jersey City, N. J., for defendant Local 69.

Robert H. Wall, Jersey City, N. J., for defendant Local 274.

WORTENDYKE, District Judge.

This action is brought by former members in good standing of a union local (Local 14) against the local's parent labor organization (United or U.A.), and against a new local (Local 69) chartered by United following the revocation of the charter of Local 14. Plaintiffs joined as an additional defendant another local (Local 274) which was (and continues to be) in existence both before and since the revocation of the charter of Local 14. However, by a stipulation of all of the parties, during the course of the trial of this action, the complaint was dismissed as to Local 274, with prejudice but without costs.

The revocation of the charter of Local 14 effected an ouster of the plaintiffs from membership therein, and they were refused membership in Local 69, which was the successor of Local 14, despite the admission to Local 69 of all other former members of Local 14 who made application for such membership. The plaintiffs predicate their assertion of this Court's jurisdiction upon the provisions of 29 U.S.C. § 412. They contend that their exclusion from membership in Local 69 violates the proscriptions of Section 101(a) (5) of the Landrum-Griffin Act (Act), 29 U.S.C. § 411(a) (5), which provides:

"(5) Safeguards against improper disciplinary action.—

"No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A)

served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing."

The evidence presented before me upon the trial of this action is barren of any basis for inferring compliance with the requirements stated in subdivisions (A), (B) and (C) of the cited subsection. The evidence is uncontradicted that the effects of the acts, omissions and proceedings of which the plaintiffs complain amount to an expulsion of the plaintiffs from membership in United by means of their exclusion from membership in Local 69. I, therefore, conclude from the preponderance of the evidence that the conduct of United and of Local 69, of which complaint is made in this action, has been and continues to be violative of the rights of the plaintiffs under 29 U.S.C. § 411(a) (5), entitling the plaintiffs to injunctive relief, in accordance with the provisions of 29 U.S.C. § 412.

Local 14 was a chartered local union labor organization subordinate to and affiliated with United, within the contemplation of the language of 29 U.S.C. § 402(i). The evidence discloses that these labor organizations were engaged in an industry affecting commerce, within the meaning of subdivision (j) of the same section. Prior to the revocation of the charter of Local 14 by United, each of the plaintiffs was a member in good standing of that Local and of United, as such status is defined in subsection (o) of the same section. The plaintiffs were also officers of Local 14, as the term officer is defined in subsections (n) and (q) of that section.

As is disclosed in the opinion of New Jersey Superior Court Judge Price, speaking for the Appellate Division of that Court in Local Union No. 14 of the United Association of Journeymen and Apprentices of the Plumbing and Pipefitting Industry of the United States and Canada v. United Association, etc. and Local Union No. 274 of the United Association, etc. (hereinafter referred to as the New Jersey litigation), decided April 12, 1960 and reported in 61 N.J.Super.

228, and in 160 A.2d 664, 666, "United has 'sole and exclusive organizing jurisdiction over all plumbers and pipefitters' work within the American Federation of Labor.' Within United there are 'different craft classifications composed of journeymen with different, skills' of which 'plumber' and 'pipefitter' are two * * *". Local 14 and Local 274 who were parties to the said New Jersey litigation were "straight line" or "single craft" unions, embracing plumbers and pipefitters, as distinguished from "combination" or "massed local" unions which embraced more than one craft within the membership. "Trade line agreements" were made between Local 14 and Local 274. Prior to the commencement of the cited New Jersey litigation, Local 14 had entered into a collective bargaining agreement with Kordulak Bros. Inc. for the performance of work at a plant in Bayonne, New Jersey, which Kordulak was constructing for Standard Oil Company. The work contemplated by the Kordulak contract included the installation of "process piping", which Local 14 claimed to lie equally within the trade jurisdiction of the plumbers and the pipefitters. With this contention Local 274 (the pipefitters) disagreed, claiming exclusive jurisdiction in itself. The resulting jurisdictional dispute was brought before United, which, after hearing, decided against the contention of Local 14. On July 28, 1959, United issued an order that the charter of Local 14 be suspended, unless Local 14 advised United, within 15 days from the order of suspension, (1) that it had complied with United's decision that process piping belonged to and was part of the trade jurisdiction of Local 274; (2) that Local 14, within said period, would state in writing that its agreement with Kordulak covered only plumbing work; and (3) that it would remove from the Kordulak job all plumbers doing pipefitters' work. Under date of August 6, 1959, Local 14 advised United that it complied with United's order of July 28 under duress, reserving its right to appeal the order of suspension and to seek relief in an appropriate court.

Thereupon Local 14 instituted the New Jersey jurisdictional litigation above referred to, in which it sought injunctive relief against the enforcement of United's suspension order of July 28, 1959. That litigation was decided adversely to Local 14 because of its failure to exhaust intra-union remedies.

Following the final determination of the New Jersey litigation, on June 13, 1960, the charter of Local 14 was revoked by United. Each member of Local 14 was advised by the General President of United, in his letter of even date with the revocation order and accompanying a copy of the same, that membership in United was terminated by the order of revocation; but that the General President had designated special representatives "to contact all the former members of Local 14 and to acquaint them with the fact that a new plumbers' local union will be chartered in Jersey City, New Jersey" to be known as Plumbers Local Union No. 69, "with territorial jurisdiction embracing that territory which was allocated to former Local Union 14 and a trade jurisdiction limited to plumbing." In addition to the copy of the order of revocation, the said letter also enclosed an addressed, stamped postcard which the Local 14 member was directed to sign and return to the office of United, "for the application of a charter" if the member desired "again to become a member of the United Association through the newly chartered Plumbers Local Union No. 69 of the United Association * *." The former Local 14 member was further advised in the letter referred to that he might join the newly chartered local without the necessity of paying an initiation fee, since the General Executive Board had authorized waiver of "the requirement of initiating members of former Local Union 14 into the newly chartered local without the necessity of paying an initiation fee." Each of the plaintiffs in the present action received the General President's letter of June 13, 1960, with its enclosures, and properly signed and timely returned the card to United's office in Washington, D. C.

A charter for the new Local 69 was duly issued and the Local was installed on September 29, 1960. However, the plaintiffs in this action were excluded from membership in new Local 69 by direction of the General President of United. All other former members of Local 14 who signed and returned the United's "application card" were advised by United, by letter of July 19, 1960, that their requests for admission in the newly chartered local were received, and that their memberships therein were approved. The recipients of this letter of July 19, 1960 were advised that when the financial assets and properties of Local 14 had been fully collected and audited "a full account and report will be made by the United Association to you and to every member of former Plumbers' Local 14 who is now a member of Plumbers' Local 69", and that after payment of all expenses the net assets of Local 14 would be turned over "to the newly chartered Plumbers' Local 69." The same letter also advised that the General President had appointed a special representative to supervise the affairs of Local 69 until completion of audit of the finances and business affairs of Local 14, "and new officers have been elected for Local 69." The letter directed that dues should be paid into Local 69 in the same amount as those formerly paid into Local 14. The addressees of the letter were instructed that "when submitting * * * dues to Local 69, please present your dues books and this letter to special representative Wright so that he can place the dues stamps in your book and also make the necessary corrections in your dues book to show that you now hold membership in Local 69. If you will follow the procedure as set forth above, the United Association records will show no interruption of your United Association membership because of your new membership in Local 69." The letter further advised that a majority of the members of former Local 14 had applied for membership in Local 69; that Local 69 was then the exclusive bargaining representative of all journeymen plumbers

and apprentices employed by employers under agreements with former Local 14; and that the provisions of collective bargaining agreements in effect between employers and former Local 14 were to be carried out by Local 69.

Under date of September 22, 1960, the General President advised all members of Local 69, by a further letter, that they had been accepted into membership of the newly chartered Local 69 and that the first meeting thereof would be held on September 29, 1960, to be presided over by the General President's special representative, at which the charter of Local 69 would be formally installed and all members of the local obligated. The letter further informed the addressees that nominations for local office would be held at the noticed meeting, and that all members in good standing of Local 69 would be eligible as candidates for office. The letter also stated that "since this is a newly chartered local union, no qualification of being a member for three years, as provided by Section 121 of the United Association Constitution, will apply. Nor, will Section 124 of the United Association Constitution apply. This section requires one year of membership in the local union in order to be eligible to vote." The letter concluded with a formal notice that the election of officers of Local 69 would be held on October 30, 1960.

Section 157 of the Constitution of United requires that application for membership in United be made in writing upon forms prescribed for that purpose, accompanied by affidavit or affidavits as prescribed by section 158 thereof. No compliance with either of these sections was required of any of the former members of Local 14 who signed and forwarded the postcards which accompanied the General President's letter of June 13, 1960.

█ The Assistant General Secretary-Treasurer of United testified, and I find as a fact, that the General President determined which former members of

Local 14 should be accepted into membership of Local 69, and that he was directed by the General President to withhold from the plaintiffs in this action the July 19, 1960 letter of acceptance into membership of Local 69, which was sent to all other former members of Local 14 who had signed and sent in the postcard charter application referred to. The reason given by the General President for his refusal to permit the acceptance of the plaintiffs into membership in Local 69 was the connection of the plaintiffs, as former officers of Local 14, with the jurisdictional dispute with Local 274, which resulted in the New Jersey litigation hereinabove adverted to. No charges nor any disciplinary proceedings were preferred or instituted against any of the plaintiffs by reason of their connection with the jurisdictional dispute or with the prosecution of the litigation.

■ Defendants argue, in part, that plaintiffs are in no position at this stage of the litigation to assert a violation of rights established and guaranteed to them under § 101(a) (5) of the Act, because plaintiffs are precluded, they say, by an oral stipulation entered into between counsel for the parties in open Court during the trial.[1] Plaintiffs, in response, contend that the import and effect of the stipulation is a recognition that the actions of the U.A. in revoking Local 14's charter and in installing Local 69, were lawful, because in accord with its constitution and by-laws. Plaintiffs assert, however, that, notwithstanding the per se legality of the charter revocation, when considered in conjunction with what occurred thereafter, namely the chartering of a successor union and the refusal of membership therein to the plaintiffs, a violation of § 101(a) (5) is established, warranting relief in this Court. The stipulation itself (footnote 1 supra) is very concise and a review of the record brings to light little illumination of the intentions of the parties with respect thereto, and little to aid the Court in construing its language. The construction of the stipulation advocated by defendants would, in effect, have the plaintiffs stipulating themselves out of Court. I do not feel that such a drastic result was intended, nor do I feel impelled to adopt defendants' interpretation of the language in the light of the evidence presented. I find myself in accord with the plaintiffs' position.

■■ I do not hold that every revocation of a local's charter by an International union constitutes a violation of the individual members' rights under § 101(a) (5) in the absence of an individual hearing accorded to each member. However, where such revocation is part of a scheme to discriminate against certain members of the local, accomplished by their exclusion from membership in a new but essentially successor local, to membership in which all other members of the former local are automatically admitted, the conclusion is inescapable that those who are thus excluded from union benefits have been, in effect, expelled from their union without a hearing upon specific charges as required by the Bill of Rights. In such case, the expulsion is contrary to law unless performed in accordance with specified procedures. I reach this conclusion notwithstanding my finding that the International had a perfect right to revoke Local 14's charter, after hearing held upon charges preferred, for the Locals' refusal to comply with the directive of the U.A.'s General President. In Parks v. I. B. E. W., D.C.Md.1962, 203 F.Supp. 288, 299, the Court held that the individual union members' rights had been violated by the revocation of the Local's charter by the International. The Court there ordered that the decree contain a provision that both the Local and the

1. The terms of the stipulation, as reflected at p. 348 of the transcript, are as follows: "That the U.A. lawfully revoked the charter of Local Union 14 on June 13, 1960 for a lawful purpose.

" * * * [That] thereafter the U.A. chartered Local Union 69, and that Local Union 69 is a duly and lawfully constituted Local Union of the U.A., as of September 29, 1960."

members thereof were entitled to have the charter reinstated and all former members of the revoked Local be taken back. In the Parks case, it appears that there may have been grounds for the revocation by the International, but the Court held that the hearing held upon the charges brought by the International was not sufficient; thus entitling the Local to restoration of its charter. It is interesting to note that the relief was not only granted to the Local, but to the individual members as well, upon a finding of violation of their § 101(a) (5) rights. Defendants contend that the Parks case is distinguishable because there were mixed motives both lawful and unlawful for the revocation of the Local, an unlawful one being the International's desire to rid itself of the leadership of the Local. I find that a similar intent existed in the case at bar; which finding is clearly inferable from the facts as presented.

. The net effect of the revocation by the U.A. of the charter of Local 14 and the admission into membership in Local 69 of all former members of Local 14 who signed the charter application cards, except the present plaintiffs, was an adverse discrimination against the plaintiffs, which deprived them of the benefits and advantages of membership in United and in Local 69. I find Local 69 to be the successor of Local 14 in the territory in which the plaintiffs pursue their gainful occupation.[2] Moreover, such deprivation extends to the prevention of plaintiffs' enjoyment of the benefits of the collective bargaining agreement or agreements of Local 14 with employers, to which Local 69 succeeded. In sum, the actions of United and of Local 69 of which the plaintiffs here complain have as effectively expelled the plaintiffs from membership in United and in Local 69 as would have been the case had such expulsion been effected by action of Local 14. The plaintiffs have been penalized by loss of membership in United and in its Local 69 having territorial jurisdiction where they perform their occupational duties, without having been served with written specific charges, without having been given a reasonable time to prepare their defense, and without being afforded a full and fair hearing, as required by 29 U.S.C. § 411(a) (5).

The legislative history of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 401 et seq., has frequently been reviewed in the opinions of the courts which have been called upon to exercise jurisdiction thereunder. Section 401 of the cited Title expresses the Congressional finding that it is the responsibility of the Federal Government, in the public interest, to protect employees' rights to organize, choose their own representatives, bargain collectively, and otherwise engage in concerted activities for their mutual aid or protection; and that it has been found through investigations in the labor and management fields that there have been many instances of breach of trust, disregard of the rights of individual employees, and other failures to observe high standards of responsibility and ethical conduct, requiring legislation for the protection of the rights and interests of employees and the public generally, as they relate to the activities of labor organizations and their officers and representatives. In the direction of the achievement of these objectives, the Act incorporated a "bill of rights" of members of labor organizations, and afforded such members the guarantee of due

---

2. It is clear from the evidence adduced, particularly the testimony of Mr. Ward, an officer of the U.A., that the International considered Local 69 to be the alter ego of Local 14. Dues that were owned to Local 14 were considered as due and owing to Local 69. All assets of Local 14 were turned over to Local 69. In response to questioning by the plaintiffs' counsel, as to why the U.A. issued a charter to Local 69 in the early part of July, 1960, Mr. Ward replied: "It existed just in the mechanics of taking the financial record of a man who is a member of 14 and carrying him over to 69 so he would not lose any benefits."

process for the protection of their membership rights. Section 101(a) (5), violation of which is complained of here, provided one of the so-called "rights" referred to.

The greater preponderance of the evidence in this case impels me to the conclusion that the plaintiffs have suffered impairment and deprivation of the rights guaranteed to them by the Act through the actions of United and Local 69. It is perfectly clear to me that the strenuous opposition of Local 69 to the admission of the plaintiffs to membership therein is a manifestation of hostility on the part of the former members of Local 14, instigative of an effort to exclude the admission of the plaintiffs from membership in Local 69, and thereby prevent the plaintiffs from becoming candidates for local office in the successor local. The situation presented is, in substance, an attempt by one intra-local faction to eliminate from local affairs an opposing faction of the same local. If such an attempt were to receive the approval of this Court, the purpose and object of the statutory guarantee designed to protect the plaintiffs in the enjoyment of their rights as union members would be completely and effectively thwarted.

I, therefore, determine that United, its officers, boards, members, and others having authority under its constitution, refrain from directing Local 69 to continue to exclude the plaintiffs from membership in United and in Local 69, and from collaborating with said Local in its attempts to exclude plaintiffs from membership therein. I further direct that Local 69, its officers, boards, members and other bodies having authority under its constitution, shall forthwith, upon compliance by the plaintiffs or any of them with the requirements of United's letter of June 13, 1960 (which they assert have already been complied with), accept into membership of said Local 69 each of the plaintiffs in the present action who may indicate his desire therefor, and accord to him all rights and benefits under the constitution of United to which any other form-

er members of Local 14 may have become entitled through their acceptance into such membership.

This opinion is in lieu of, but shall be deemed to constitute findings of fact and conclusions of law, and an order may be submitted not inconsistent with the findings and conclusions hereinabove expressed.