**LOCAL 37, SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION and the Individual Members and Applicants thereof, Appellees,**

v.

**SHEET METAL WORKERS' INTERNATIONAL ASSOCIATION, AFL–CIO, Edward J. Carlough, and Local 3, Sheet Metal Workers' International Association, Omaha, Nebraska, Appellants.**

No. 81–1080.

United States Court of Appeals, Eighth Circuit.

Submitted April 3, 1981.

Decided July 31, 1981.

Rehearing and Rehearing En Banc Denied Sept. 2, 1981.

William L. Edmonds, Steven A. Carter, Sioux City, Iowa, for appellees.

John D. Mayne, Goldberg, Mayne, Probasco & Berenstein, Sioux City, Iowa, David D. Weinberg, Weinberg & Weinberg, Omaha, Neb., Charles A. Werner, Schuchat, Cook & Werner, St. Louis, Mo., Donald W. Fisher, argued, Donald W. Fisher Co., L. P. A., Toledo, Ohio, for appellants.

Before LAY, Chief Judge, and STEPHENSON and ARNOLD, Circuit Judges.

LAY, Chief Judge.

Local 37 of the Sheet Metal Workers' International Association and its former members brought this action claiming the International Association violated its constitution and subsection 101(a)(5) of the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 411(a)(5), when it ordered Local 37 merged with Local 3 without notice or opportunity to be heard. The district court, the Honorable Donald E. O'Brien presiding, sustained Local 37's claim that the merger was, in fact, a revocation of its charter. The court found that the Association's action was punitive in nature and that the order violated the Association's constitution as well as subsection 411(a)(5). The court alternatively found that the order by the Association was not necessary or in the best interests of the Association and its members. The Association appeals the judgment of the district court. We hold that Local 37 was legally merged under the governing provisions of the Association's constitution and that section 411(a)(5) was not violated.

*Facts.*

In January 1979 the International Association placed Local 37 under a trusteeship pursuant to express authority in the Association's constitution. This allegedly was due to misconduct of several officers of Local 37 in conducting the Local's affairs. After seven months under this arrangement, the Local's affairs had not improved. The General President of the Association, Mr. Edward J. Carlough, then decided to merge Local 37, located in Sioux City, Iowa, into Local 3, located in Omaha, Nebraska. In a letter dated August 13, 1979, addressed to the business managers of Local 37 and Local 3, with copies to all Local 37 and Local 3 members, Carlough ordered Local 37 "merged" into Local 3, pursuant to the provisions of the Association's constitution, to be effective immediately.[1] The letter contained, inter alia, instructions concerning the transfer of Local 37's documents and assets, and of Local 37 members' memberships to Local 3 and it set forth the respective rights members of Local 37 would have as members of Local 3. These transfers were effectuated by Local 3's business manager.

Local 37 and its members thereafter commenced this action in the district court seeking temporary and permanent injunctions against Carlough and the Association preventing completion of the merger and an order restoring Local 37's property and status. On the day it commenced this action, Local 37 appealed Carlough's merger order to the Association's General Executive Council. The Council sustained the merger on the ground that in August 1979 the merger was "advisable or necessary in the best interests of [the] Association and the members thereof." Thereafter the district court made its ruling in favor of Local 37.[2]

---

1. This letter succeeded a letter dated August 6, 1979, which erroneously stated the merger would be effective September 30, 1979.

2. In this appeal, the Association raises the issue of whether Local 37 adequately exhausted its intraunion remedies. It urges the Local did not assert before the General Executive Council its present claim that Carlough's order was an illegal revocation. The district court held that any appeal to the General Executive Council on the grounds that President Carlough's order was a revocation of Local 37's charter would have been futile. Where disputes arise over internal union matters such as here, involving the interpretation and application of a union constitution, exhaustion of remedies is in the best interests of all parties and should be enforced. *See Clayton v. International Union, UAW,* —— U.S. ——, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981). Here the local union raised the legality of the merger with the Council. Although this was not done in the precise terms as argued here, we agree with the district court that further exhaustion was unnecessary.

*Jurisdiction Under Section 301.*

 The district court based its jurisdiction to decide the question of interpretation of the Association's constitution on section 301 of the Labor Management Relations Act of 1947. 29 U.S.C. § 185(a). This is challenged here. The Supreme Court in *United Association of Journeymen & Apprentices of the Plumbing & Pipefitting Industry v. Local 334,* —— U.S. ——, 101 S.Ct. 2546, 69 L.Ed.2d 280 (1981), held that a union constitution is "a contract between labor organizations" within the meaning of section 301. The Court further held that a district court's jurisdiction to hear disputes between local and parent unions over interpretation of the union's constitution does not depend on allegations of a significant impact on labor-management relations or threats to industrial peace. *Cf. 1199 D.C. v. National Union of Hospital & Health Care Employees,* 533 F.2d 1205 (D.C.Cir.1976). The Court reasoned that in section 301 Congress was concerned with stability among labor organizations and enforcement of the terms of a union's constitution would contribute to the achievement of such stability. —— U.S. at ——, 101 S.Ct. at 2553. Thus, we think it clear the district court properly asserted jurisdiction over this dispute.

*The Constitution.*

The district court held that Local 37 was not merged into Local 3 but, in actuality, Local 37's charter was revoked without a trial or determination of guilt, in violation of Article 3, section 2(d) of the Association's constitution.[3] The evidence focuses primarily on Carlough's alleged merger letter of August 13 and on two letters written by

Carlough subsequent to his order. The first was a private letter from Carlough to Robert Mandicino, a member of former Local 37, dated September 25, 1979. It said, in relevant part,

In further reference to our letter to you of September 4, in view of all that occurred in the name of Local 37 by its then elected leadership I was left with no alternative to the decision I was forced to make regarding *revocation* of the local union's charter. I wish it could have been otherwise.

(Emphasis added.)

The second letter, dated September 28, 1979, from Carlough to all association business agents, stated, in part,

It was recently my unpleasant duty to remove a business representative from office for, among other things, working people on union jobs who were not union members, and failing to properly place these people on application for union membership. This X-brother was subsequently expelled from membership by an International Trial Board consisting of his peers—fellow union representatives— the local union charter was *revoked,* and the membership transferred to another local union.

(Emphasis added.)

Carlough's August 13 letter was the formal document that ordered the merger and set out the terms and conditions by which it would be effectuated. In that letter Carlough specifically called his action a "merger," citing as authority for his action, Article 3, section 2(g), which expressly gives the General President authority to merge two locals at his discretion.[4] The terms and

---

3. Article 3, section 2(d) provides:

*Revocation of Charters.* With the approval of the General Executive Council the General President may revoke the charter of any local union or council found guilty *after trial,* of any violation of the provisions of this Constitution or of failure to comply with valid orders, decisions or policies of this Association.

Should it be necessary to revoke a local union charter, provision shall be made for the transfer of all local good standing members, to other affiliated local unions.

(Emphasis added).

4. Article 3, section 2(g) provides:

The General President shall have full authority ... to amalgamate or merge two or more local unions or district councils when it is advisable or necessary in the best interests of this Association and the members thereof and, except as otherwise provided in this Section to establish the terms and conditions under which such separations, amalgamations and mergers shall be consummated including where necessary the establishment of additional locations within the jurisdiction of the local union which will afford the mem-

conditions of the August 13 order are consistent with a merger of Local 37 into Local 3 and those terms and conditions were actually followed by Local 3's business manager when he carried out the merger. We conclude that under the Association's constitution, Carlough ordered a merger of Local 37 into Local 3 and did not effect a revocation of Local 37's charter.

■ The parties agree that Carlough's original order was all that was necessary to effect a merger under the constitution. No other documents were necessary. Applying basic contract principles, a court may not look to extrinsic evidence if a document is not ambiguous in meaning. *Cf. Verlo v. Equitable Life Assurance Society,* 562 F.2d 1034, 1036 (8th Cir. 1977). Here there exists no ambiguity in Carlough's order. His subsequent characterization of the merger as a revocation cannot be controlling or negate his original action. It is the merger order itself which governs. Carlough in his letter specifically makes reference to a merger under Article 3, section 2(g) which relates to mergers. If Carlough had originally ordered a revocation of the charter under Article 3, section 2(d) and then later claimed he intended a merger, the Association would similarly have no legal basis to treat it as a merger.

Although in some instances there may be little difference between revocation and merger, under the Association's existing constitution there are fundamental differences. A local's charter may be revoked upon a finding of violation of the provisions of the constitution or failure to comply with an order of the Association. The effect of a revocation is punitive and although the constitution provides for transfer of "all local good standing members" to other affiliated locals, under Article 10, section 10 of the constitution, the assets of the former local revert to the International Association. Additionally, under a revocation, rights and privileges of the transferred members may

well be diluted. No trial is necessary prior to merger of two locals; the merger may be effected when it is deemed advisable or necessary in the best interests of the association. The effect of the merger is to transfer assets of the disappearing local to the surviving local and the voting rights of the respective members are protected; no discipline or encroachment on the rights of the transferred members is effected.

In the present case there is no record of bad faith or punitive measures taken against the membership. We find the merger was legally implemented by the International Association.

*Subsection 411(a)(5)—"Otherwise Disciplined."*

Subsection 411(a)(5) prohibits a member of a labor organization from being "fined, suspended, expelled, or otherwise disciplined" without having been "(A) served with written specific charges; (B) given a reasonable time to prepare a defense; (C) afforded a full and fair hearing." 29 U.S.C. § 411(a)(5). The question presented is whether the members of Local 37 were "otherwise disciplined" by Carlough's merger order, thereby invoking the due process provision of subsection 411(a)(5). The district court found that Carlough's order violated subsection 411(a)(5).

■ The language of subsection 411(a)(5) prohibits all acts that have the effect of fining, suspending, expelling or otherwise disciplining union members unless procedural protections are provided to the effected members. The *effect* of the action on members' rights is the controlling consideration. *See Local Union No. 853 v. United Brotherhood of Carpenters & Joiners,* 83 LRRM 2759, 2764 & n.7 (D.N.J.1972); *Pittman v. United Brotherhood of Carpenters & Joiners,* 251 F.Supp. 323, 324 (M.D.Fla. 1966).

■ Whether a merger of two local unions or revocation of a local's charter consti-

---

bers an adequate opportunity to nominate candidates and vote in elections and to classify and separate members and applicants for membership into such local unions or district

councils as will best protect the interests of this Association and the members thereof subject to appeal as provided in Article Nineteen (19).

tute a disciplinary sanction within the meaning of subsection 411(a)(5) turns on the evaluation of the effect of the merger on the members' (1) right to vote, (2) right to hold elected office, (3) right to acquire job opportunities, (4) right to participate in welfare and pension funds, (5) right to share in the assets of the disappearing local, and (6) whether they have the same rights under the collective bargaining agreements before and after the merger, consolidation or revocation. Where these rights are substantially protected by the merger, consolidation or revocation order, these actions have been found not to be disciplinary. *E. g. Local 55/56 v. United Hatters, Cap & Millinery Workers' International Union*, 495 F.Supp. 60, 62–63 (E.D.Mo.1980), *aff'd*, 657 F.2d 274 (8th Cir. 1981); *Strong v. Sheet Metal Workers' International Association*, 90 LRRM 2795 (N.D.Calif.1974); *Local Union No. 853 v. United Brotherhood of Carpenters & Joiners*, 83 LRRM 2759 (D.N.J.1972). In *Local Union No. 853*, the international union ordered a consolidation of. two unions and then revoked the charter of one after the local failed to carry out the consolidation. In deciding whether the consolidation or revocation constituted "discipline," the court considered whether the members of the former local were discriminated against. The court noted that "no pension or welfare rights were endangered, and constitutional restrictions upon the privilege of voting and holding office for new members were waived." 83 LRRM at 2765. Similarly, the district court in *Strong* held that where members' rights are protected, merely · merging two locals into two other locals does not "otherwise discipline" members of the disappearing locals. 90 LRRM at 2801–02.

Conversely, in cases where members of disappearing locals lost valuable rights, the courts have held the merger, consolidation or revocation to be "discipline." In· *Calabrese v. United Association of Journeymen & Apprentices of the Plumbing & Pipefitting Industry*, 211 F.Supp. 609 (D.N.J.1962), the district court held that revocation of a local's charter "otherwise disciplined" members in good standing of the former local

*who were denied membership in the successor local.* The court said:

> [W]here such revocation is part of a scheme to discriminate against certain members of the local, accomplished by their exclusion from membership in a new but essentially successor local, to membership in which all other members of the former local are automatically admitted, the conclusion is inescapable that those who are thus excluded from union benefits have been, in effect, expelled from their union without a hearing upon specific charges as required by the [Labor] Bill of Rights.

*Id.* at 613.

In *Pittman v. United Brotherhood of Carpenters & Joiners*, 251 F.Supp. 323 (M.D. Fla.1966), the district court concluded that revocation of the local's charter constituted "discipline" of the local's members because (1) under the Brotherhood's constitution only persons who had been members in good standing during the preceding twelve months could run for office or vote for officers, and (2) the influence of plaintiffs in selecting their leaders and deciding policy, once they were even allowed to vote, was diminished because the local to which the plaintiffs' memberships were transferred was over seven times as large as the former local. The Third Circuit in *Parks v. International Brotherhood of Electrical Workers*, 314 F.2d 886, 921–22 (4th Cir. 1963), held that allegations in the plaintiff's complaint that a local charter was revoked stated a cause of action under subsection 411(a)(5). The court said that the allegations showed the members of the former local were "otherwise disciplined" because

> [A]lthough there is some uncertainty as to how the members' rights in the various local and international pension and welfare funds will be affected, there can be little doubt that the revocation order does touch these rights. In addition, as a proximate result of the International's action, members of Local 28 have suffered a loss of employment opportunities.

*Id.* (footnote omitted).

In his letter of August 13, 1979, effectuating the merger, President Carlough or-

dered (1) all members of Local 37 transferred to Local 3 with "full credit for years of continuous good standing in former Local Union 37," (2) "[t]he funds, books and records, or such of them as may be appropriate" transferred to Local 3, (3) Local 3 to maintain a branch office and conduct regular meetings in Sioux City, Iowa, and (4) Local 3 to consider valid and binding all existing collective bargaining agreements between Local 37 and employers or employer associations. We interpret Carlough's order that former Local 37 members be given "full credit for years of continuous good standing in former Local Union 37" to require former members of Local 37 to be dovetailed into the seniority structure at Local 3 and to guarantee their right to vote, hold office, obtain job opportunities and participate in pension and welfare funds as full members of Local 3. The ordered transfer of assets of former Local 37 to Local 3 allows members of former Local 37 to share in these assets. Finally, Carlough's order clearly states that the collective bargaining agreements entered into by Local 37 shall be preserved.

Although members of former Local 37 were not an autonomous division of the Sheet Metal Workers' International Association after the merger, their basic rights as union members were preserved by Carlough's merger order and its implementation. We find, therefore, that the merger did not "otherwise discipline" members of former Local 37 as that term is used in subsection 411(a)(5).[5]

The judgment for the plaintiff is vacated and the cause remanded with directions to enter judgment for the defendants.

---

**5.** Although the district court found the merger order violated subsection 411(a)(5), the court said, "The Court believes it could be argued . . . under a 'merger' if all promises were kept, the interests of the members of Local 37 will be looked after almost as well as if Local 37 continued in existence as a local."