**UNITED FOOD AND COMMERCIAL WORKERS UNION LOCAL NO. 911, AFL—CIO & CLC, et al., Plaintiff,**

v.

**UNITED FOOD AND COMMERCIAL WORKERS INTERNATIONAL UNION, AFL—CIO, CLC, et al., Defendant.**

**No. 3:99 CV 7713.**

United States District Court,
N.D. Ohio,
Western Division.

Oct. 31, 2000.

Theodore M. Iorio, Jr., Christine A. Reardon, Donato Iorio, Kalniz, Iorio & Feldstein, Toledo, OH, Robert E. Funk, Jr., Edward P. Wendel, Office of General Counsel, United Food and Commercial Workers, Washington, DC, for Local 911 United Food and Commercial Workers International Union, AFL—CIO & CLC, David W. Gelios, James Brown, Pam Roberts, Andrea, John Doe.

Melvin S. Schwarzwald, Schwarzwald & Rock, Cleveland, OH, Robert E. Funk, Jr., Edward P. Wendel, Office of General Counsel, United Food and Commercial Workers, Washington, DC, for Local 951 United Food & Commercial Workers International Union, AFL—CIO & CLC, Douglas H Dority, Joseph T Hansen.

## MEMORANDUM OPINION

KATZ, District Judge.

This action is before the Court on Defendants' motion to dismiss (Doc. No. 18) and Plaintiffs' motion for oral argument (Doc. 29). Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 2201, 29 U.S.C. § 185, 29 U.S.C. § 412, and 29 U.S.C. § 501. For the following reasons, Defendants' motion to dismiss will be granted, and Plaintiffs' motion will be denied.

### BACKGROUND[1]

United Food and Commercial Workers Union Local No. 911, AFL—CIO, CLC ("Local 911") is a duly chartered Local of the United Food and Commercial Workers International Union, AFL—CIO, CLC ("International Union"). Plaintiffs are Local 911, its President, David Gelios, Secretary/Treasurer of Local 911 James Brown, and Local 911 members Pam Roberts, Andrea Martin, and John Doe, representing all unnamed Local 911 members.[2] Defendants are the International Union, President of the International Union Douglas Dority, Secretary/Treasurer of the International Union Joseph T. Hansen, "Region 4" of the International Union (an administrative division of the International Union), and Regional Director of Region 4 Mike Leonard.

---

1. The facts as presented by the Plaintiffs have been taken as true for the purpose of deciding the motion to dismiss.

2. Plaintiffs have indicated that they will file a motion to dismiss John Doe as a party plaintiff. Pl.Br. in Opp. at 51.

The UFCW represents workers in the meat packing, food processing, and retail industries. Meijer, Inc. ("Meijer"), not a party to this action, is a retail chain based in Grand Rapids, Michigan. Meijer engages in the sale of groceries and general merchandise. Local 911 is the recognized collective bargaining unit for four Meijer stores in the Toledo, Ohio, area, as well as for Meijer stores in Findlay, Ohio, and Sandusky, Ohio. Local 911's collective bargaining agreement with Meijer for its Toledo stores expired on September 19, 1998. On September 29, 1998, members of Local 911 rejected Meijer's "last, best, and final offer" through a secret ballot. Members of the unit had been informed that a vote against the contract was a vote in favor of a boycott.

On September 30, 1998, Gelios sent a letter to Dority that stated that Local 911 intended to implement a boycott. On October 8, 1998, Dority ordered Gelios not to boycott Meijer. A copy of that order was sent to Mr. Earl Holton, the chief executive officer of Meijer. Gelios called off the boycott. A rally was scheduled on November 8, 1998, at a Toledo-area Meijer store. On November 6, 1998, Dority sent a letter ordering Local 911 not to picket. At the rally, representatives of Local 911 distributed flyers informing participants that Local 911 was not boycotting Meijer and requesting that participants not engage in activity that fell within the legal definition of picketing. Local 911 and Meijer subsequently reached an agreement with respect to the Toledo-area stores.

On February 1, 1999, Gelios wrote a letter to Dority to ask whether Local 911 would be given jurisdiction over a new Meijer store scheduled to open in Bowling Green, Ohio.[3] On February 18, 1999, Dority responded to Gelios' letter: "Based on consideration of the relevant factors in this matter, I am assigning jurisdiction for the new Meijer store in Bowling Green, Ohio, to Local No. 1059." Local 1059 is based in Columbus, Ohio. On February 22, 1999, Local 911 appealed the assignment of jurisdiction. On October 10, 1999, Gelios appeared at the UFCW International Executive Board Meeting in Los Angeles, California, where he presented his appeal. The Executive Board of the International Union unanimously denied the appeal, and this action followed.

Plaintiff's first amended complaint contains five counts. Count I alleges that the Defendants violated Section 101(a)(5) of the Labor Management Reporting and Disclosure Act (LMRDA), 29 U.S.C. § 411, through denial of due process during the appeal of the jurisdictional assignment. Count II alleges that the "no picket" and "no boycott" orders by the International violated Local 911's members' right to free speech and assembly as guaranteed under section 101(a)(2) of the LMRDA. Counts III and IV both allege violations of Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185; Count III alleges breach of contract through unreasonable diminution of jurisdiction, while Count IV alleges deprivation of due process by maintaining a dual interest. Finally, Count V alleges breach of fiduciary duty in violation of Section 501 of the LMRDA. Plaintiffs have requested punitive, prospective, exemplary, and compensatory damages in excess of one million dollars, as well as declaratory relief.

Defendants have filed a motion to dismiss Plaintiffs' complaint in its entirety due to lack of proper venue in this Court; in the alternative, Defendants request that Plaintiffs' complaint be dismissed due to a failure to state a claim upon which relief may be granted. Plaintiff has filed a motion for oral argument, alleging the existence of novel and complex issues. Appropriate responses and replies have been filed, and both motions are ripe for decision.

### DISCUSSION

*A. Plaintiffs' Motion for Oral Argument*

Plaintiffs have moved that this Court grant oral argument on Defendants' mo-

---

3. Bowling Green is located between Findlay and Toledo.

tion to dismiss. Oral argument is unnecessary. All motions for enlargement of page limit have been granted, and parties have taken ample advantage of the opportunity afforded by these motions to exhaustively brief the issues raised by the motion to dismiss. Plaintiffs' motion for oral argument will be denied.

### B. Motion to Dismiss Standard

As a preliminary matter, the Court sets forth the burden on the Court once a 12(b)(6) motion to dismiss has been made. In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the function of the Court is to test the legal sufficiency of the complaint. In scrutinizing the complaint, the Court is required to accept the allegations stated in the complaint as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984), while viewing the complaint in a light most favorable to the plaintiffs, *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir.1976). The Court is without authority to dismiss the claims unless it can be demonstrated beyond a doubt that the plaintiff can prove no set of facts that would entitle it to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Westlake, supra*, at 858. *See generally* 2 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE, § 12.34[1] (3d ed.1997).

### C. Venue under the LMRDA

■ Defendants argue that venue in this Court is improper because no alleged violation occurred in this district sufficient to give rise to venue under the LMRDA. Section 102 of the LMRDA states:

Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate. Any such action against a labor organization shall be brought in the district court of the United States

for the district where the alleged violation occurred, or where the principal office of such labor organization is located.

29 U.S.C. § 412.

Defendants contend that all relevant actions occurred in either Washington, D.C. (the assignment of jurisdiction to Local 1059, the issuance of the no boycott/no picket order, and the issuance of the cease boycott order) or Los Angeles, California (the International Board's affirmance of Dority's decision). To further support their position, Defendants cite *Lodge No. 42 of the Int'l Bhd. of Boilermakers v. Int'l Bhd. of Boilermakers*, 324 F.2d 201 (6th Cir.1963). In *Lodge No. 42*, the plaintiff labor union, located in the Middle District of Tennessee, had sued its district union, located in the Eastern District of Tennessee and its international union, located in Kansas City, Kansas. *Id.* at 201–02. The plaintiff alleged that the district union had requested that the international union disaffiliate the plaintiff. *Id.* The district court found that venue in the Middle District was improper, since neither defendant had acted in that district. *Id.* at 202. The Sixth Circuit, in a per curiam decision, affirmed the district court's decision, holding, "The only question presented is what if anything gave rise to a cause in the Middle District of Tennessee and in considering this question the trial judge pointed out that neither of the defendants has its principal office in that district and neither is alleged to have done anything there." *Id.*

Plaintiffs attempt to distinguish *Local 42*, and instead suggest that the instant case is more similar to *Vestal v. International Bhd. of Teamsters*, 245 F.Supp. 623 (M.D.Tenn.1965). In *Vestal*, a number of union members challenged their international union's interpretation of a referendum voting procedure. *Id.* The district court held that venue was appropriate even though the order for the referendum and the allegedly improper interpretation of the constitution had both taken place

outside of the district. *Id.* at 626. The court found that the defendants had required the plaintiffs to take action in the Middle District of Tennessee. *Id.* Furthermore, the court noted that dismissal of the action due to a lack of venue would remove the litigation to an area "far removed from the actual scene of controversy." *Id.*

It is the opinion of this Court that the instant case is somewhere on the continuum between *Lodge 42* and *Vestal.* On one hand, Defendants are correct in their assertion that the constitutional interpretation and the denial of jurisdiction did not taken place in this district. On the other hand, Plaintiffs have alleged that the assignment of jurisdiction of the Bowling Green store was based directly on actions taken in this district, and, although Plaintiffs were not told to take an action (as the *Vestal* plaintiffs were), they were ordered to forbear from action in this district. Given the intimate connection of this litigation with events and actions in the Northern District of Ohio, including a complained-of forbearance from action mandated by the Defendants, venue in this Court is proper for Counts I and II of Plaintiff's first amended complaint under Section 102 of the LMRDA, 29 U.S.C. § 412.[4]

### D. Standing

■ Defendants claim that Local 911 lacks standing to bring a claim under LMRDA due to its status as a labor organization. Defendants' assertion is well taken. In *United Bhd. of Carpenters and Joiners of America, Dresden Local No. 267 v. Ohio Carpenters Health and Welfare Fund,* 926 F.2d 550 (6th Cir.1991), the Sixth Circuit declined to extend standing to a component labor organization similar to Local 911. The Sixth Circuit noted, "We do not see how extending to component units within a labor organization the rights of members secured by the LMRDA would advance union democracy or protect the right of individual members to partici-

pate in union deliberations and governance. We do see that such an extension would provide antagonistic factions within a union with yet another arena for combat." *Id.* at 556. Local 911's LMRDA claims (Counts I and II) will be dismissed.

■ Defendants are also correct in their assertion that Gelios' and Brown's LMRDA claims must also be dismissed to the extent that they are brought in their capacity as officers of Local 911. The purpose of the LMRDA was to protect the rights of the rank-and-file union members, not to protect union officers and employees. *See Finnegan v. Leu,* 456 U.S. 431, 437, 102 S.Ct. 1867, 1871, 72 L.Ed.2d 239 (1982). Neither Gelios nor Brown has alleged any special loss due to their capacity as a union officer; furthermore, both Gelios and Brown may continue to maintain a LMRDA suit based on their status as members of Local 911. Gelios' and Brown's LMRDA claims (Counts I and II) will be dismissed insofar as they are brought in their capacities as officers of Local 911.

### E. Claims against Region 4

Defendants argue that "Region 4" is only an administrative convenience, not a legal entity that can sue or be sued, and have moved that all claims be dismissed as to Region 4. Plaintiffs have not disputed Defendants' contention that "Region 4" is neither created by nor provided for in the International constitution, and Region 4 does not make filings under the LMRA or the LMRDA. Accordingly, all claims will be dismissed as to Region 4.

### F. Policy of Judicial Noninterference with Internal Union Disputes

As the United States Court of Appeals for the Sixth Circuit noted in *United Bhd. of Carpenters, Local 267 v. United Bhd. of Carpenters, South Central Ohio Dist. Counsel,* 992 F.2d 1418 (6th Cir.1993),

---

**4.** Defendants do not dispute the propriety of venue in this Court for Counts III, IV, and V of the First Amended Complaint. Venue for

those counts is proper under Section 301 and Section 501 of the LMRA.

"[T]here is a well-established, soundly based policy of avoiding unnecessary judicial intrusions into the affairs of labor unions." *Id.* at 1425 (quoting *Local No. 48, United Bhd. of Carpenters v. United Bhd. of Carpenters*, 920 F.2d 1047, 1051 (1st Cir.1990)). With that policy of restraint in mind, this Court considers the individual counts of the Plaintiffs' first amended complaint below.

### G. Count I—Section 101(a)(5)

In Count I of their first amended complaint, Plaintiffs claim that Defendants violated the LMRDA Bill of Rights prohibition against improper disciplinary actions without due process. Section 101(a)(5) of the LMRDA states:

> No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

29 U.S.C. § 411(a)(5).

Plaintiff's complaint is based on the assignment of jurisdiction of the Bowling Green Meijer's to Local 1059 and the subsequent treatment of Gelios' appeal of that assignment at the October 10, 1999 International Executive Board Meeting. According to the Plaintiffs, the assignment of jurisdiction constituted discipline for actions taken during Local 911's negotiations with Meijer. Furthermore, it is alleged that Gelios was given inadequate time and information necessary to prepare a presentation in opposition to the assignment. Finally, Plaintiffs appear to have alleged a conflict of interest based on the employment status of a number of the International Vice-Presidents who voted on the appeal.

▮ "Otherwise disciplined" refers to "actions taken under color of the union's right to control the member's conduct in order to protect the interests of the union or its membership." *See Breininger v.*

*Sheet Metal Workers Int'l Assoc. Local Union No. 6*, 493 U.S. 67, 91, 110 S.Ct. 424, 439, 107 L.Ed.2d 388 (1989). Acts directed at a union local that directly injure all union members can also constitute "otherwise disciplined" under the LMRDA. *See Parks v. International Broth. of Electrical Workers*, 314 F.2d 886, 922 (4th Cir.1963). Finally, "otherwise disciplined" might also be implicated when a union penalizes a member in a way that separates him from other union members in good standing. *See Macaulay v. Boston Typographical Union No. 13*, 692 F.2d 201 (1st Cir.1982).

▮ Plaintiffs' contentions are without merit. A jurisdictional assignment does not constitute a form of "other discipline" under Section 101(a)(5). Plaintiffs have failed to bring to this Court's attention a single authority that includes an unfavorable assignment of jurisdiction as a type of discipline, and this Court declines the invitation to do so now. It is important to note that Plaintiffs have not alleged that their jurisdiction over a store was removed, only that they did not receive a jurisdictional assignment that they had anticipated.

In support of their position, Plaintiffs cite three cases in which the defendant unions were found to have engaged in alternative discipline in violation of the statute. *See Parks, supra* at 922; *Calabrese v. United Assoc. of Journeymen & Apprentices of the Plumbing and Pipe Fitting Industry*, 211 F.Supp. 609 (D.N.J. 1962); *Pittman v. United Bhd. of Carpenters & Joiners*, 251 F.Supp. 323 (M.D.Pa. 1966). These cases are clearly distinguished from the instant case, since in each of the above-cited cases the charter of the local was revoked, and members of those unions lost corresponding rights. Here, no rights have been lost. Plaintiffs claim that they have been harmed through the loss of potential bargaining power through a larger unit and through erosion of the wage rate in the Bowling Green area. However, even when assumed to be

true, this effect is too indirect to rise to the level necessary to constitute discipline for the purposes of the statute. Finally, if the jurisdictional assignment were to be construed as "discipline", other discretionary actions in which one local is favored over another by an International Union could be challenged as disciplinary, leading to further inefficient and unnecessary judicial involvement in internal union affairs.

Plaintiffs' complaint fails to allege that any recognizable discipline occurred. Therefore, there is no need to discuss their related due process and conflict of interest allegations. Plaintiffs' Section 101(a)(5) claim will be dismissed.

### H. Count II—Section 101(a)(2)

In Count II of their first amended complaint, Plaintiffs claim that Defendants violated the LMRDA Bill of Rights prohibition against unreasonable restriction of union members' rights to meet, assemble, and express their views. Section 101(a)(2) of the LMRDA states:

> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

29 U.S.C. § 411(a)(2).

Plaintiffs claim that their rights to free speech and assembly were violated by Defendants' restrictions on boycotting and picketing and by subsequent discipline through failure to assign jurisdiction of the Bowling Green Meijer's to Local 911. Plaintiffs' allegations are without merit.

Just as they did with their Section 101(a)(5) claims, Plaintiffs have requested that this Court expand the bounds of Section 101(a)(2) to include conduct (or restrictions on conduct) that have not previously fallen under the ambit of the statute. "Title I protects rank and file union members who speak out against union leaders or who seek elective union offices." *Tucker v. Bieber*, 900 F.2d 973, 977 (6th Cir. 1990) (citing *United Steelworkers of America v. Sadlowski*, 457 U.S. 102, 109, 102 S.Ct. 2339, 2344, 72 L.Ed.2d 707 (1982)). In the instant case, Plaintiffs have not claimed that they were prevented from discourse concerning their union membership; instead, they claim that they were prevented from engaging in expression directed against a third party. Plaintiffs have not presented any authority to support the proposition that they are entitled to the protections of the LMRDA in this situation. In fact, at least one district court has held to the contrary. "The free speech provisions of [the LMRDA] are designed to protect speech in the context of the union democratic process, i.e. political speech primarily addressed to other union members, rather than free speech at large." *Helmer v. Briody*, 759 F.Supp. 170, 176 (S.D.N.Y.1991). This Court agrees. Plaintiffs have alleged no abridgment of their freedoms of speech and assembly relating to the union democratic process. At best, Plaintiffs have merely expressed disagreement with a legitimate tactical decision that the International was entitled to make.

Plaintiffs have failed to state a claim upon which relief may be granted under Section 101(a)(2) of the LMRDA. Count II of Plaintiffs' first amended complaint will be dismissed.

### I. Count III—Breach of Contract

The UFCW Constitution is a contract between Local 911 and the International Union, and a breach of the constitu-

tion gives rise to a claim under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. *See Wooddell v. International Bhd. of Electrical Workers, Local 71*, 502 U.S. 93, 99, 112 S.Ct. 494, 499, 116 L.Ed.2d 419 (1991). In Count III of their First Amended Complaint, Plaintiffs allege that the assignment of the Bowling Green jurisdiction to another local violated Article 31(A) of the constitution, "Local Union Charters," which states in pertinent part: "The International President, in consultation with the International Secretary–Treasurer, shall determine the jurisdiction of Local Unions and may modify the jurisdiction of Local Unions from time to time, subject to an appeal to the International Executive Board." (Pl. F.A.C. Exhibit C, at 23). The gravamen of Plaintiffs' complaint is that there is no provision in the constitution allowing disciplinary removal of jurisdiction, and that the Defendants advanced no valid justification under the constitution for the jurisdictional assignment.

A reading of the relevant portion of the International constitution indicates that the International president had ample discretion in the assignment of jurisdiction. Local 911's bylaws also acknowledge this discretion. The portion of the bylaws captioned "Article II, Jurisdiction" states in pertinent part: "The geographical jurisdiction of this Local Union shall encompass such area as may be determined from time to time by the United Food and Commercial Workers International Union.... The trade jurisdiction of this Local Union shall encompass such jurisdiction as may be determined from time to time by the United Food and Commercial Workers International Union." (Pl. FAC Exh. B).

Plaintiffs have cited a number of cases in support of their position; unfortunately, some of these cases do them more harm than good. In *Vestal v. Hoffa*, 451 F.2d 706 (6th Cir.1971), the Sixth Circuit stated the proper standard for judicial review of a § 301 claim: "Courts are reluctant to substitute their judgment for that of union officials in the interpretation of the union's constitution, and will interfere only where

the official's interpretation is not fair or reasonable." *Id.* at 709. Intervention might also be had in instances where an interpretation was made in bad faith. "We are not unmindful of the importance of avoiding unnecessary judicial involvement in internal union affairs.... But the conduct charged in this case is so unconscionable [that] ... the defendant's bad faith would strip away the protection from judicial interference to which the union would be entitled otherwise." *United Auto Workers Local 594 v. International Union UAW*, 956 F.2d 1330, 1337 (6th Cir.1992).

The Plaintiffs have alleged facts sufficient to show neither unreasonableness nor bad faith on the part of the Defendants. On the contrary, the facts, even as alleged by the Plaintiffs, indicate that the decision made by Dority was well within the bounds of reasonableness and not based on bad faith. Finally, the above-mentioned policy of judicial restraint against interference with the internal affairs is strongly implicated here. Plaintiffs' claim of breach of contract under the LMRA is without merit and will be dismissed.

*J. Count IV—Deprivation of Due Process and Maintenance of a Dual Interest*

Count IV appears to be a combination of two claims, both based on Section 301 of the LMRA and an alleged breach of the contract created by the International constitution. The first part of Count IV alleges that the Defendants have violated various sections of the constitution dealing with, *inter alia*, the International's duty to act on behalf of the local unions and their members. Plaintiffs claim that the Defendants breached these provisions through cooperation with and capitulation to Meijer over the past thirty years.

It is not the function of this Court, nor was it the apparent intention of Congress with the LMRA, to provide a forum for local complaints concerning the overall negotiation strategy of an international labor union. Even assuming, as Plaintiffs have

alleged, that the International Union allows Meijer to dictate which local Meijer will deal with, to maintain non-union stores, to maintain single-store bargaining units, and to present its own health, welfare, and pension statistics, the instant litigation cannot provide the arena within which to determine that the International's dealings with Meijer are prohibited under the LMRA. As Plaintiffs recognize, the "concession" of the above items allows the International to have the opportunity, though not a guarantee, for voluntary recognition of an International-approved Local at new Meijer stores. Perhaps this opportunity is worth whatever "concessions" the International must offer. The wisdom of such a strategic decision is not a fit subject for decision by this Court.

Furthermore, in their brief in opposition to Defendants' motion to dismiss, Plaintiffs note that "the International's manner of dealing with Meijer dates back to the 1970's, and has endured through the merger of the International Union and multiple International Presidents." (Pl.Resp. at 50). Local 911 was founded in 1995. (Pl. FAC. at Exh. A). No doubt Local 911 and its leaders were fully aware of the International's strategy with respect to its dealings with Meijer when they applied for recognition, and they cannot be heard to complain now.

The second part of Count IV alleges breach of contract through violation of due process rights during Local 911's appeal of the assignment of jurisdiction. Plaintiffs have not identified any clause of the International constitution guaranteeing them due process other than Article 5, which expresses "[t]he commitment to confer all rights and privileges of membership, including a voice and vote in union affairs, to all rank and file union members." (Pl. FAC at 31). Plaintiffs' allegations include lack of proper notice of the International's documentation, failure of the International Executive Board to undertake adequate

deliberation prior to denial of the appeal, and conflict of interest among the members of the executive board who voted on the denial of the appeal, based on their employment by the International Union.

Plaintiffs' contentions regarding a lack of due process are without merit. Even when viewed in a light favorable to the Plaintiffs, the facts in the first amended complaint indicate that the International Executive Board conducted a hearing on the appeal. A reading of the correspondence attached to the complaint indicates that Gelios exhibited more than a small amount of obstinance with respect to acknowledging the Defendants' attempts to inform him of the reasons for the jurisdictional decision. Furthermore, the type of conflict of interest that existed among the majority of the members of the International Executive Board would exist when the members voted on *any* action; employment by the International, therefore, could not be a rational reason for disqualification due to a conflict of interest.

Count IV of Plaintiffs' complaint is without merit and will be dismissed.

### K. Count V—Breach of Fiduciary Duty

In the final count of their amended complaint, Plaintiffs allege that Dority breached his fiduciary duties imposed by Section 501 of the LMRDA, 29 U.S.C. § 501.[5] Section 501(a) of the LMRDA provides:

> The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of such person ... to hold [the organization's] money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws ... to refrain

---

**5.** By order on March 14, 2000, this Court granted leave for Gelios to bring an action pursuant to Section 501 of the LMRDA. Gelios had previously requested that the Interna-

tional Board take remedial action concerning his complaints, but that request was denied on February 8, 2000.

from dealing with such organization as an adverse party or in behalf of an adverse party . . . and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account . . . for any profit received by him. . . .

29 U.S.C. § 501.

 Although Plaintiffs' Section 501 allegations are numerous, they can be narrowed to two categories. First, Plaintiffs allege that, in an effort to convince Gelios to dismiss his jurisdictional appeal to the International Board, Dority offered to provide Local 911 with a subsidy, designated for "organizing," that would have replaced the dues lost due to Local 911's failure to obtain assignment of the Bowling Green store; Plaintiffs contend that this offer constituted a misuse of International funds. Second, Plaintiffs allege that Dority's continual acquiescence to Meijer's demands placed Dority in a position from which he dealt with Local 911 and the International Union as or on behalf of an adverse party in a non-economic fashion.

The Sixth Circuit has indicated that Section 501 was not intended to allow judicial review of all union activities:

The primary purpose of 29 U.S.C. § 501(a) is to ensure that union officials do not violate their fiduciary duties to the members of their organization by engaging in self-dealing or the misuse of union funds, which they hold in trust. However, the statute is not meant as a vehicle for judicial oversight of union activity, but only as a means of redressing unreasonable and arbitrary actions by union officials. The federal courts do not sit as a "super review" board of internal union grievances unless there is evidence of impropriety in the proceedings. This section of LMRDA authorizes union members to seek reimbursement of improperly spent union funds in the same manner as a shareholders derivative suit.

*Corea v. Welo*, 937 F.2d 1132, 1143 (6th Cir.1991). However, Section 501 also allows recovery in certain instances where a union official breaches a broader fiduciary duty and causes union members "an invaluable and irreparable loss of democratic rights." *Id.* at 1144 (citing *Wade v. Teamsters Local 247*, 527 F.Supp. 1169, 1177 (E.D.Mich.1981)).

In light of *Corea*, neither class of Plaintiffs' allegations is sufficient to survive dismissal, even when taken as true. The only allegation involving the misuse of International funds does not indicate that any money was ever actually transferred to Local 911. Furthermore, Plaintiffs have identified no constitutional provision that may have been violated by this offer. Plaintiffs have neither shown nor alleged that such an offer evidences impropriety.[6] A review of the facts and allegations in this case indicates that is very likely just the situation the Court of Appeals contemplated when it stated that "federal courts do not sit as a 'super review' board of internal union grievances." *Corea*, 937 F.2d at 1143.

The Plaintiffs' reliance on the broader fiduciary duties outlined in *Corea* is also misplaced. Plaintiff has alleged no facts that suggest the requisite "invaluable and irreparable loss of democratic rights" that would be necessary for the expansion of Section 501 liability to encompass any wrongdoing by Dority with respect to his dealings with Meijer.

Even when taken as true, Plaintiffs' allegations fail to state a claim upon which relief may be granted under Section 501 of the LMRDA. Count V of Plaintiffs' complaint will be dismissed.

### CONCLUSION

Accordingly, and for the foregoing reasons, Plaintiffs' motion for oral argument (Doc. No. 29) is denied. Furthermore, Defendants Rule 12(b)(6) motion to dismiss

---

**6.** This Court cannot help but note that acceptance of this offer could have saved both the International Union and Local 911 a large sum of money, given the not inconsiderable legal fees that were no doubt generated in this action.

for failure to state a claim upon which relief may be granted (Doc. No. 18) is granted with respect to all counts of Plaintiffs' complaint, and the case is dismissed.

IT IS SO ORDERED.